**James T. PRUITT, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF PUBLIC SAFETY, DIVISION OF MOTOR VEHICLES, Appellee.**

No. S–3991.

Supreme Court of Alaska.

Feb. 7, 1992.

Robert Merle Cowan, Law Offices of Cowan & Gerry, Kenai, for appellant.

Teresa Williams, Asst. Atty. Gen., Anchorage, Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This is an appeal from the superior court's affirmance of the Department of Public Safety's revocation of James Pruitt's driver's license. The primary issue in this appeal is whether the Division of Motor Vehicles (DMV), Department of Public Safety (DPS) was bound by the District Court's ruling that Pruitt's due process rights were violated in regard to the criminal refusal to take a breathalyzer test charge which had been filed against Pruitt.

## I. FACTS AND PROCEEDINGS

On April 15, 1988, James T. Pruitt was stopped and arrested for driving while intoxicated (DWI). After being taken to the Seward Correctional Center, Pruitt was asked to submit to a chemical test of his blood alcohol content by blowing into an

intoximeter. Pruitt refused to submit to the test and asked to make a phone call to his lawyer. After making a phone call, Pruitt refused the test again stating "[m]y lawyer told me to do anything I want to, but I'm still not blowing." The police then read Pruitt the implied consent notice,[1] after which Pruitt again refused to submit to the test. Pruitt was then brought into the booking room. As Pruitt was taking his possessions out of his pocket, he grabbed a bottle of Binaca (a breath freshener which has an alcohol content), and sprayed it down his throat.

While an officer was reading Pruitt the DMV order of license revocation, Pruitt stated that he wanted to take the intoximeter test. The officer refused to administer the test on the bases that Pruitt had already refused to take the test after discussing the matter with his attorney; had refused to take the test after the informed consent notice had been read to him; and had sprayed his throat with Binaca, which would alter the test results and consequently require another twenty minute observation period before the intoximeter test could be administered.

Pruitt's driver's license was revoked by DMV on the basis that he refused to submit to the breath test. On April 20, 1988, Pruitt appealed the revocation and requested an administrative hearing. He conceded the validity of the stop but asserted that he had not refused to take the test.

In the underlying criminal case, concerning breath test refusal (BTR), Magistrate Peck ruled on September 12, 1988 that "[t]he court at this point is not necessarily prepared to find as a matter of law that there was no actus reus to the charge of BTR." The magistrate ordered further briefing on the issue.

Thereafter an administrative hearing was held on November 7, 8, & 10, 1988, before a hearing officer in regard to the revocation of Pruitt's driver's license. The sole issue at this hearing was whether Pruitt's actions constituted a refusal to take a breath test, and whether he had cured that refusal by subsequently consenting. The hearing officer affirmed the revocation of Pruitt's license on the basis that Pruitt had been given ample time and opportunity to take the breath test. Pruitt objected to the hearing officer's ruling, arguing that Magistrate Peck's decision of September 12 was a final binding ruling which dictated a contrary holding. Pruitt further argued that *Briggs v. State, Dep't of Public Safety*, 732 P.2d 1078 (Alaska 1987), supported his contention that the administrative agency was collaterally estopped by virtue of the district court's ruling in the criminal proceeding. The hearing officer indicated that she would examine the case and determine whether she was bound by Magistrate Peck's decision.

On November 9, Magistrate Peck issued a second ruling in the criminal case. He found that the issue of whether Pruitt refused to take the breath test was a matter of fact to be determined by the jury. The following day, on November 10, the hearing officer ruled that Magistrate Peck's decision of September 12 was not binding, as the magistrate had not dismissed the refusal charge. The hearing officer also held that *Briggs* was not controlling. Accordingly, the hearing officer affirmed Pruitt's license revocation. Pruitt then appealed that administrative decision to the superior court.

On August 1, 1989, Magistrate Peck entered a third order in the criminal case, reversing himself and dismissing the criminal charge for refusal to take a breath test. The prosecution petitioned the court of ap-

---

**1.** Alaska Statute 28.35.032 provides in part:
(a) If a person under arrest refuses the request of a law enforcement officer to submit to a chemical test under AS 28.35.031(a), after being advised by the officer that the refusal will, if that person was arrested while operating or driving a motor vehicle for which a driver's license is required, result in the denial or revocation of the license or nonresident privilege to drive, that the refusal may be used against the person in a civil or criminal action or proceeding arising out of an act alleged to have been committed by the person while operating or driving a motor vehicle or operating an aircraft or a watercraft while intoxicated, and that the refusal is a misdemeanor, a chemical test shall not be given, except as provided by AS 28.35.035.

peals for review of the dismissal. The petition was subsequently denied.

On December 22, 1989, Pruitt filed a petition for reconsideration with the DMV. Pruitt's petition for reconsideration was based on Magistrate Peck's August 1, 1989 decision in the criminal case. No action was taken by the DMV on the petition. At oral argument before the superior court in connection with his administrative appeal, Pruitt moved to supplement the record with the petition for reconsideration he had filed with DMV. The superior court denied supplementation of the record, concluding that the materials had not been before the hearing officer and that they were not relevant or material to the pending administrative appeal.

The superior court then affirmed the administrative agency's decision to revoke Pruitt's driver's license. It concluded that the administrative agency was not collaterally estopped from considering the issue of Pruitt's refusal since there was no final judgment on the merits on the refusal to take a breath test prior to the decision reached by the hearing officer. Moreover, it ruled that there was substantial evidence presented to the hearing officer to support the finding that Pruitt refused to take the breath test despite several opportunities, and assuming that this jurisdiction adopted a flexible rule allowing a motorist to cure a refusal, Pruitt had not cured his refusal.

This appeal followed.

## II. COLLATERAL ESTOPPEL

■ Pruitt's main contention is that the administrative agency was collaterally estopped from considering the issue of his breath test refusal by virtue of the district court's third decision. That decision dismissed the criminal breath test refusal charge on the basis that Pruitt's due process rights were violated since he was not given an opportunity to cure his refusal. Pruitt cites *Briggs v. State, Dep't of Public Safety*, 732 P.2d 1078 (Alaska 1987) for the proposition that an order in a criminal case is binding on a subsequent administrative action when the requirements of collateral estoppel are met. Pruitt con-

tends that in the instant case all of the requirements for collateral estoppel have been met. He urges this court to hold that the administrative agency was bound by the district court's decision that his due process rights were violated in connection with the refusal charge.

The state responds that Magistrate Peck's September 18, 1988 Order did not constitute a final order for purposes of collateral estoppel. The state argues that prior to the administrative decision being entered, the magistrate in his Order of November 9, 1988 found the question of refusal to be a jury issue. The magistrate's Final Ruling and Dismissal Order of August 1, 1989 was entered after the agency had made its determination on November 10, 1988 revoking Pruitt's license. Accordingly, the state asserts that for purposes of issue preclusion, the final judgment must be entered prior to the administrative decision. We agree with the state and reject Pruitt's arguments. In *Briggs*, we stated that the requirements for collateral estoppel are:

(1) the issue decided in a prior adjudication was precisely the same as that presented in the action in question; (2) the prior litigation must have resulted in a final judgment on the merits; and (3) there must be 'mutuality' of parties, i.e., collateral estoppel may be invoked only by those who were parties or privies to the action in which the judgment was rendered.

732 P.2d at 1081, (citing *Pennington v. Snow*, 471 P.2d 370, 375, 377 (Alaska 1970)); *see also Kott v. State*, 678 P.2d 386, 391 (Alaska 1984) (upholding mutuality requirement in criminal context).

■ Pruitt has fulfilled the first requirement. The issue of whether Pruitt was given a reasonable opportunity to cure his refusal was presented in both the criminal and civil proceedings. The privity requirement has also been fulfilled. *See Briggs*, 732 P.2d at 1082 (the Department of Public Safety and the state were in privity because the general rule is that litigation by one agency is binding on other agencies of the same government). We conclude, how-

ever, that Pruitt has not met the finality requirement. In *Briggs* we stated:

> Concerning the finality requirement for collateral estoppel, we observe that the state did not appeal the district court's suppression ruling. For purposes of issue preclusion, "final judgment" includes "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." (citations omitted). Factors supporting a conclusion that a decision is final for this purpose are "that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal." (quoting *Restatement (Second) of Judgments* § 13g (1982).)

*Id.* In the instant case the parties were fully heard and the district court's decision on the refusal issue was appealable. However, finality is lacking if an issue of law or fact essential to the adjudication of the claim has been reserved for future determination.[2] *Restatement (Second) of Judgments* § 13b (1982). In Pruitt's case, a final determination in the criminal proceeding was not rendered until August 1, 1989, when Magistrate Peck reversed his previous ruling that the issue of Pruitt's refusal was a jury issue, and dismissed the criminal charge against Pruitt regarding his refusal to take the breath test. Thus, the final judgment on the merits in the criminal case was entered nine months subsequent to the hearing officer's final decision.

In arguing that the agency should have granted his motion for reconsideration by virtue of the district court's final judgment,

Pruitt essentially asks this court to hold that the doctrine of collateral estoppel can be retroactively applied. We refuse to do so. Collateral estoppel requires that a final judgment on the merits occur prior to the decision reached by the hearing officer. *Restatement (Second) of Judgments* § 27 (1982) supports our position:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a *subsequent* action between the parties, whether on the same or a different claim.

(Emphasis added).

§ 27 comment states:

> *a. Subsequent action between the same parties.* The rule of issue preclusion is operative where the *second* action is between the same persons who were parties to the prior action, and who were adversaries (see § 38) with respect to the particular issue, whether the second action is brought by the plaintiff or by the defendant in the original action.

(Emphasis added).

Pruitt cites *Brownsberger v. Dep't of Transp.*, 460 N.W.2d 449 (Iowa 1990), for an example of a case in which collateral estoppel was retroactively applied. We do not find that case persuasive, however, because the reviewing court was interpreting a statute, which required reinstatement under certain circumstances, to determine whether it effectively operated as a statutory exclusionary rule.[3] *Id.* at 450. The court concluded that it did and reversed the

---

**2.** We have often stated that a final judgment retains all of its res judicata effects pending resolution of an appeal of the judgment. *Rapoport v. Tesoro Alaska Petroleum Co.*, 794 P.2d 949, 952 (Alaska 1990); *Holmberg v. State, Div. of Risk Mgt.*, 796 P.2d 823 (Alaska 1990). Such preclusive effect is only afforded, however, when the issue in the first action has been resolved by a final judgment on the merits. *Rapoport*, 794 P.2d at 951.

**3.** Iowa Code section 321J.13(4) provides in part:
A person whose motor vehicle licence or operating privilege has been or is being revoked under section 321J.9 or 321J.12 may

reopen a department hearing on the revocation if the person submits ... a petition stating that a criminal action on a charge of a violation of section 321J.2 filed as a result of the same circumstances which resulted in the revocation has resulted in a decision in which the court has held that the peace officer did not have reasonable grounds to believe that a violation of section 321J.2 had occurred to support a request for or to administer a chemical test.... Such a decision by the court is binding on the department and the department shall rescind the revocation.
*Brownsberger*, 460 N.W.2d at 450.

DOT's refusal to rescind Brownsberger's revocation. *Id.* at 451.

■ Unlike *Brownsberger*, Pruitt is not basing his arguments for retroactivity on a statute, but on the doctrine of collateral estoppel. In *Briggs v. State, Dep't of Public Safety*, 732 P.2d 1078 (Alaska 1987), we held that the state was collaterally estopped from relitigating whether the state took reasonable steps to preserve a breath sample, but we retroactively applied the rule of *Champion v. Dep't of Public Safety*, 721 P.2d 131 (Alaska 1986), which found that due process requires the state to take reasonable procedures to preserve a breath sample.[4] Thus, we have held that when a new rule of law is adopted it can be retroactively applied in certain circumstances. *See Farleigh v. Municipality of Anchorage*, 728 P.2d 637 (Alaska 1986); *Howe v. State*, 611 P.2d 16 (Alaska 1980). However, we reject Pruitt's contention that collateral estoppel should be retroactively applied for the reason that collateral estoppel requires the final judgment to be entered prior to a determination in the subsequent proceeding. The final judgment of dismissal in the criminal proceeding against Pruitt was not obtained until nearly nine months after the agency made its license revocation determination. Therefore, we affirm the superior court's rejection of Pruitt's collateral estoppel claim.

## III. DID THE HEARING OFFICER AND THE SUPERIOR COURT ERR IN NOT ADOPTING A FLEXIBLE TEST ALLOWING A MOTORIST TO CURE A REFUSAL TO TAKE A BREATH TEST?

The issue of whether a person should be allowed an opportunity to cure a refusal to take a breath test is one of first impression for this court. Pruitt submits that in addressing the question of whether a person should be allowed to cure a refusal, this court should adopt a "flexible" rule and allow an accused motorist a "reasonable" opportunity to change a refusal into a consent. Pruitt argues that absent evidence that a delay would materially affect the results of the test, or would be a substantial inconvenience, a motorist should be able to cure a refusal. Pruitt further submits that a delay of less than 20 minutes in the instant case would not have interfered with the results of the test. In support of these arguments Pruitt draws on cases from other jurisdictions that have adopted the "flexible" rule. *E.g., Zahtila v. Motor Vehicle Div.*, 39 Colo.App. 8, 560 P.2d 847 (1977) (refusal may be changed into consent unless the delay will materially affect the results of the test); *Larmer v. State Dep't of Highway Safety*, 522 So.2d 941 (Fla.Dist.Ct.App.1988) (defendant may change initial refusal to take a breath test to a consent by changing his mind moments later and clearly stating it); *State v. Moore*, 62 Haw. 301, 614 P.2d 931 (1980) (defendant can cure a refusal unless a delay would materially affect the test results or prove substantially inconvenient to administer); *Lund v. Hjelle*, 224 N.W.2d 552 (N.D.1974) (a subsequent consent cures a prior refusal when a request to take the test is made within a reasonable amount of time after the prior refusal).

The state argues that once a motorist makes an informed decision to refuse to take a breath test, that person should be bound by the decision and not be permitted to later cure the refusal by agreeing to take the test. The state points out that many jurisdictions have favored a strict standard because of the serious impediment to law enforcement that a contrary

---

4. In *Briggs* this court addressed the issue of whether *Champion* should be retroactively applied:

> *Champion* was decided on June 20, 1986. Briggs's breathalyzer test was administered on April 13, 1984, and the administrative hearing held on August 24, 1984. This court has weighed certain criteria in determining the extent to which a new rule of law should be applied in the criminal area: (1) the purpose to be served by the new standards; (2) the extent of reliance by law enforcement authorities on the old standards; and (3) the effect on the administration of justice of a retroactive application of the new standards. *State v. Glass*, 596 P.2d 10, 13 (Alaska 1979); *Lauderdale v. State*, 548 P.2d 376, 383 (Alaska 1976).
>
> 732 P.2d at 1080, n. 4.

interpretation would have. The state quotes *Hoyle v. Peterson*, 216 Neb. 253, 343 N.W.2d 730, 734 (1984), for an example of such considerations:

> There are several factors militating against the argument for additional time to allow a driver's subsequent offer to take the test. As time elapses between arrest and the test, the reliability and accuracy of the test diminishes. The time element may require involvement of an expert to extrapolate information derived from a delayed test. This tends to unnecessarily compound or complicate matters of evidence. Also, permitting a delayed test at the subsequent offer of the motorist would require officers to wait and see if there was a change of mind by the refusing motorist, and would require officers to forego other responsibilities in order to arrange the belated test—all contrary to the clear intent behind the implied consent law that the test be submitted and completed expeditiously.

(Citations omitted);

*See also, Zidell v. Bright*, 264 Cal.App.2d 867, 71 Cal.Rptr. 111 (1968) (refusal found where motorist refuses test upon arrest, but consents 30–45 minutes later); *State v. Landry*, 428 A.2d 1204, 1206 (Maine 1981) (once motorist has voluntarily refused a reasonable opportunity to take test, police do not need to provide test when motorist changes his mind); *Application of Kunneman*, 501 P.2d 910 (Okla.Ct.App.1972) (police had sufficient grounds to deny motorist's ultimate request to take test after five prior refusals); *Peterson v. State*, 261 N.W.2d 405, 409 (S.D.1977) (refusal found where motorist does not comply with three requests for test over a 23–minute period, then consented an hour later after calling a friend).

The state submits that jurisdictions that have adopted a flexible standard do not allow motorists to contact an attorney prior to making a decision whether to take the test. Moreover, the courts which have adopted the "flexible" rule are reluctant to bind a motorist with an error of judgment, which is often the result of an uncounseled decision. The state contends that there is no basis to be similarly reluctant in Alaska, which has adopted a different rule on access to counsel.

The elements of consideration for courts that have adopted the "flexible" test are stated in *Lund v. Hjelle*, 224 N.W.2d at 557 (in which the motorist reconsidered his initial refusal about one hour later after speaking with his insurance agent):

> [T]he subsequent consent to take the test cures the prior first refusal when the request to take the test is made within a reasonable time after the prior first refusal; when such a test administered upon the subsequent consent would still be accurate; when testing equipment or facilities are still readily available; when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or expense to the police; and when the individual requesting the test has been in police custody and under observation for the whole time since his arrest.

The state submits that even under standards articulated by courts which allow the flexible approach, Pruitt did not establish by a preponderance of the evidence that his eventual request to take the test was sufficiently timely to cure his prior refusal.

The issue of whether a motorist should be allowed an opportunity to cure a refusal has previously been addressed by the court of appeals in a criminal prosecution context. In *Lively v. State*, 804 P.2d 66 (Alaska App.1991), the court of appeals considered the question of whether to adopt a subsequent consent as an affirmative defense to the charge of refusal to submit to a chemical test. The court noted that although all fifty states have enacted implied consent laws making licence suspension the automatic penalty for refusal to submit to a chemical test, only Alaska and Nebraska have made a refusal a criminal offense in and of itself. *Id.* at 69.

Reviewing case law from other jurisdictions, the court examined the rationales behind the minority (flexible) and majority (absolute) rules:

There are two basic rationales behind the adoption of the rule that a subsequent consent can cure a prior refusal. The first reason is fairness to the arrestee. The Arizona Court of Appeals held:

> Although an absolute rule preventing a subsequent consent after an initial refusal has the advantage of granting unmistakable clarity to the defendant's obligation under the implied consent law, it could lead to unnecessarily harsh and self-defeating results.

> The other basis for the subsequent consent rule is the belief that this rule best furthers the purpose of the implied consent statutes by encouraging the administration of chemical tests in as many cases as possible.

> The majority rule is that a refusal cannot be vitiated by a subsequent consent....

> As in the case with the minority rule, there are two basic rationales for the bright-line rule that a refusal cannot be rescinded by a subsequent consent. The first is the concern that the reliability of the test results diminishes with the passage of time, thus allowing arrestees to manipulate their test results by delaying their consent.... The other rationale for the bright-line rule is that it is unreasonable to expect the arresting officer to consider a refusal as conditional, and to require the officer to remain available to test the arrestee in the event of subsequent change of heart.

*Id.* at 69–70 (citations omitted). After balancing the opposing rationales of the minority and majority rules, the court of appeals stated that it was inclined to allow a cure under certain circumstances, but declined to adopt the defense for a motorist who had already been turned over to jail custodians by the arresting officer and allowed to smoke a cigarette. *Id.* at 71.

■ We agree with the court of appeals and think that the adoption of a flexible rule is appropriate in light of the reasons in support of the flexible rule and the fact that Alaska has criminalized a refusal to take a breathalyzer test. AS 28.35.032. Moreover, we see no reason to apply a different rule for administrative proceedings when the court of appeals has adopted a flexible rule for criminal proceedings. In determining whether a motorist's subsequent consent to take the test cures the prior refusal, we adopt the factors articulated in *Lund v. Hjelle,* 224 N.W.2d at 557, *i.e.:* that the subsequent consent occurred within a reasonable time after the prior first refusal; that the test administered following the subsequent consent will still be accurate; that the test will not result in any substantial expense or inconvenience to the police; and that the arrestee has been in continuous custody of the arresting officer and under observation for the entire time.

■ We next address the question of whether under the flexible rule Pruitt cured his refusal to take a breath test. Pruitt has the burden to establish by a preponderance of the evidence that his eventual request to take the test was made within a reasonable time, that a breath test administered upon his eventual consent would have been accurate, and that honoring his request for a test would not have resulted in substantial inconvenience or expense to the police. Our study of the record leads us to hold that Pruitt has failed to do so.

Officer Richard's testimony indicates that Pruitt was read the implied consent notice, was allowed to call his attorney, yet continued to refuse to take the test after several opportunities, and only consented after spraying breath spray containing alcohol down his throat. This latter act on Pruitt's part is tantamount to a refusal regardless of any expressed willingness on his part to take the breath test. *See e.g., White v. Melton,* 60 A.D.2d 1000, 401 N.Y.S.2d 664 (1978); *Moseley v. Commonwealth,* 492 S.W.2d 204 (Ky.App.1973). Moreover, Pruitt's act of spraying his throat necessitated an additional twenty minute observation period according to the provisions of 7 AAC 30.020.[5] Such a delay

5. For purposes of an administrative license revocation, a blood alcohol test result must be .10

would pose a substantial burden on the officer who then had custody of Pruitt since the officer would have been prevented from fulfilling other duties.

For the reasons stated above, we affirm the superior court's affirmance of DMV's revocation of Pruitt's driver's license.

## IV. ATTORNEY'S FEES

We next address the question of whether the superior court abused its discretion in granting the state $1,106.00 in attorney's fees.

### A. *Background*

■ Pruitt appealed the decision of the DMV hearing officer to suspend his license. The superior court entered its decision on April 20, 1990, affirming the agency's decision. Pruitt filed a notice of appeal to this court and also sought a stay of the enforcement of his license suspension pending resolution of the appeal. Pruitt's application for a stay was denied. Thereafter Pruitt's attorney contacted the Attorney General's Office and proposed to withdraw Pruitt's appeal to this court "as long as both parties suffer their own costs and fees." The Attorney General's Office conditioned the agreement on the grounds that Pruitt pay $500 in attorney's fees. Pruitt refused. Then on November 28, 1990, the state requested the superior court to award it attorney's fees pursuant to Appellate Rule 508(e). Thereafter, on January 4, 1991, the superior court entered an award in the amount of $1,106, which sum represented 50% of the state's actual attorney's fees.

Pruitt argues that the superior court abused its discretion in granting the State's attorney's fees in response to a motion that was untimely and for which no showing of excusable neglect or good cause was offered. Although Pruitt concedes that there is no explicit time limit for the filing of motions for attorney's fees following appeal, he submits that nine months consti-

tutes an excessive and prejudicial delay. Pruitt argues that he should have been accorded the benefit of an adjudication of attorney's fees prior to making a decision as to whether to appeal from the superior court to this court. Pruitt notes that the state's delayed motion for attorney's fees after this appeal was filed forced him to file motions to supplement the points on appeal and for permission to file supplemental briefing. Additionally, Pruitt notes the recent amendment of Civil Rule 82 which provides for a 30 day deadline in which to move for an award of attorney's fees after the date shown in the Clerk's Certificate of Distribution on the Judgment.

The state cites *Rosen v. State Bd. of Pub. Accountancy,* 689 P.2d 478, 482 (Alaska 1984), in arguing that the determination of Rule 508(e) attorney's fees, when the superior court is acting as an intermediate appellate tribunal, "is committed to the sound discretion of our trial courts." Moreover, the state argues that under *Rosen,* the superior court is not required to give its reasons for awarding attorney's fees. Thus, the state contends that the court properly exercised its discretion in awarding attorney's fees against Pruitt.

We have previously held that it is within the discretion of the trial court to impose a time limit for the filing of attorney's fees. *State v. University of Alaska,* 624 P.2d 807 (Alaska 1981). However, a motion for attorney's fees must be made within a reasonable time after the entry of final judgment. *Id.* As Justice Matthews previously noted,

It is important that a motion for attorney's fees be made reasonably promptly after judgment because the losing party may base his decision whether to appeal on the merits on the size of the adverse award of attorney's fees. Since the decision on whether to appeal on the merits must be made within 30 days after distribution of the judgment, Appellate Rule

---

or more. AS 28.35.030(a)(2). It is possible that a timely breath test result would have been above .10, but that a delay would allow the alcohol level to dissipate below .10. Thus, a

second observation period potentially would have skewed the test results since a dissipation of blood alcohol would occur, making a delay in implementing a breath test prejudicial.

204(a)(1), a motion for attorney's fees should be made at a time soon enough after judgment so that the motion may be ruled upon before the 30 days in which an appeal may be taken has expired.

*T & G Aviation, Inc. v. Footh,* 792 P.2d 671, 672 (Alaska 1990) (Matthews, C.J., dissenting).

We hold that the state's motion for attorney's fees, filed seven months after final judgment has been entered, was not filed within a "reasonable time." Here we think it relevant that Pruitt has shown he was prejudiced by the state's delay.

Accordingly, we conclude that the superior court abused its discretion in awarding the state attorney's fees under Appellate Rule 508(e) on a motion that was filed seven months after judgment was entered. Thus we hold that the superior court's award of attorney's fees must be vacated.

The decision of the superior court is AFFIRMED in part and REVERSED in part.