**Dennis C. SNYDER, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–4991.

Court of Appeals of Alaska.

Aug. 26, 1994.

Rehearing Denied Sept. 23, 1994.

Robert John, Fairbanks, for appellant.

Gayle L. Garrigues, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

A jury convicted Dennis C. Snyder of driving while intoxicated (DWI) and refusal to submit to a breath test (refusal). Acting District Court Judge William R. Smith imposed consecutive sentences of 120 days with 60 days suspended on each count. Judge Smith also revoked Snyder's driver's license for consecutive five-year periods. Snyder appeals his convictions and sentences. We affirm Snyder's convictions. We also affirm his sentences, except with respect to the imposition of consecutive license revocations and fines.

## FACTS

On the night of March 20, 1993, Alaska State Trooper Sgt. Charles Lovejoy was driving home when he encountered Snyder in his car, which had apparently slid into the snow berm at an intersection. Snyder did not appear to have been injured in the collision and did not complain of pain. He did appear to be intoxicated. Lovejoy administered some field sobriety tests, all of which Snyder failed. Lovejoy then placed Snyder under arrest for DWI.

Alaska State Trooper Dixie Spencer drove Snyder from the scene of the arrest to the police station. While driving to the station, Snyder requested a blood test to determine his alcohol level. At the station, Spencer asked Snyder to take a breath test by blowing into the Intoximeter machine. Snyder made four purported attempts to blow into the machine, but, despite two readings of the implied consent warnings and despite Spenc-

er's repeated instructions about how to blow into the machine's tube and how long to sustain his breath, Snyder did not comply: indeed, on one occasion, it did not appear that Snyder blew into the tube at all.

After Snyder had made three unsuccessful attempts at blowing into the tube, Spencer advised him that he could try "one more time." When the fourth attempt proved unsuccessful, Spencer told Snyder, "All right, Dennis, we'll just charge you with refusal." Snyder insisted, "I blowed in the tube. It's your fault." He claimed, "The machine don't work.... I blowed in, I did everything you asked." He then offered, "I'll blow again, ... It's not over, one more time." By then, however, Spencer had already pressed the print button on the Intoximeter, and a further test would have required a five-minute delay. Spencer terminated the session and charged Snyder with DWI and refusal. After the Intoximeter test was terminated, Snyder again requested a blood test.

## MERITS

### 1. *Denial of Motion to suppress and dismiss*

Prior to trial, Snyder moved to suppress and dismiss, claiming that the state had improperly failed to provide him a blood test instead of a breath test. On appeal, Snyder challenges the district court's denial of his motion. Snyder argues, first, that he had a right to the test of his choice. This argument is meritless.

Alaska's implied consent statutes plainly indicate the legislature's selection of breath tests as the preferred method of determining blood alcohol levels in DWI cases. AS 28.35.031; AS 28.35.032. Although DWI arrestees may consent to other testing methods and arresting officers are not barred from honoring reasonable requests for alternative tests, *Anchorage v. Ray*, 854 P.2d 740, 748–49 (Alaska App.1993), we have recognized that the legislature "may constitutionally leave the choice of chemical test to the arresting officer." In short, the Alaska implied consent statutes do not give DWI arrestees the right to a test of their choice.

*Hamilton v. Anchorage,* 878 P.2d 653 (Alaska App.1994).

Snyder further argues, however, that, by failing to honor his requests for a blood test, the police violated their constitutionally compelled duty to "collect and preserve" evidence. The general rule, however, is that the state has no duty to collect evidence; its duty of preservation applies only to evidence that has actually been gathered. *March v. State,* 859 P.2d 714, 716 (Alaska App.1993).

Under the due process clause of the Alaska Constitution, a limited exception to the general rule applies to the extent that the state is required to gather and preserve evidence affording DWI arrestees a reasonable opportunity to challenge the result of a breath test obtained pursuant to the implied consent statutes. *See Gundersen v. Anchorage,* 792 P.2d 673, 676 (Alaska 1990) ("Since a defendant must provide the state with potentially incriminating evidence at the risk of criminal penalties, we hold that due process requires that the defendant be given an opportunity to challenge the reliability of that evidence in the simplest and most effective way possible, that is, an independent test."). By definition, however, this exception to the general rule attaches only after an arrestee submits to a breath test. *See Ahtuangaruak v. State,* 820 P.2d 310, 310 (Alaska App.1991) ("Ahtuangaruak's decision to submit to chemical testing of his breath gave him a due process right to independent testing of the breath test result.").

To the extent that any duty to collect evidence of intoxication might have arisen in this case, that duty was met by Trooper Spencer's repeated efforts to obtain a breath test from Snyder. Having deliberately thwarted the state's efforts to determine his blood alcohol level by means of a breath test, Snyder cannot now complain that his right to due process was denied by the state's failure to collect the same evidence by alternative means. We find no violation of due process here.

Snyder further maintains that the state's failure to honor his requests for a blood test violated his right to an independent test of his own choosing, as provided for under AS 28.35.033. Alaska Statute 28.35.-033(e) provides:

The person *tested* may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of the person's own choosing administer *a chemical test in addition to the test administered at the direction of a law enforcement officer.* The failure or inability to obtain an *additional* test by a person does not preclude the admission of evidence relating to the test taken at the direction of a law enforcement officer; the fact that the person under arrest sought to obtain such an additional test, and failed or was unable to do so, is likewise admissible in evidence.

(Emphasis added.) The wording of this provision makes it clear that the statutory right to an independent test of choice arises after a person has submitted to a breath test. *See, e.g., State v. Zoss,* 360 N.W.2d 523 (S.D. 1985); *State v. Choate,* 667 S.W.2d 111 (Tenn.Cr.App.1983); *see also Ward v. State,* 758 P.2d 87 (Alaska 1988).

As Snyder points out, however, there is abundant authority for the proposition that, regardless of any statutory entitlement, DWI arrestees have a fundamental right to gather and present exculpatory evidence; as part of this right, they are entitled to secure an independent test of their own choosing. *See, e.g., Montano v. Superior Court,* 719 P.2d 271, 276 (Ariz.1986) ("[A] defendant must be allowed to counter the state's scientific evidence of intoxication, or evidence of refusal, with the defendant's own scientific evidence.") (citations omitted); *Smith v. Cada,* 114 Ariz. 510, 562 P.2d 390, 392–94 (App.1977); *State v. Swanson,* 222 Mont. 357, 722 P.2d 1155, 1157 (1986) ("[o]ne accused of a crime involving intoxication has a right to obtain an independent blood test to establish his sobriety regardless of whether he submits to a police designated test"). *See generally* John P. Ludington, Annotation, *Drunk Driving: Motorist's Right to Private Sobriety Test,* 45 A.L.R.4th 11 §§ 4, 15 (1986 & Supp.1993).

These cases, however, impose no obligation on the state to provide arrestees with inde-

pendent tests or to assist them in obtaining such tests. They hold only that the state may not affirmatively interfere with or thwart an arrestee's efforts to secure and use independent testing. *See State v. Peterson,* 227 Mont. 418, 739 P.2d 958, 961 (1987) ("If a blood test of the defendant is unavailable through no unreasonable acts of an officer or officers, the *Swanson* rule does not apply."); *cf. Ward,* 758 P.2d at 90 ("[t]he police in the instant case acted deliberately in denying a defendant the right to a blood test.").

In the present case, Snyder argues only that the state violated his right to an independent test by failing to take the affirmative step of providing him with the blood test he requested. Snyder does not argue that the troopers in any way interfered with his ability to secure an independent test of his own choosing, and the record contains no evidence of interference. Indeed, there is no evidence whatsoever that Snyder was actually unable to obtain an independent test. Under these circumstances, we find no deprivation of the right to an independent test and conclude that the district court did not err in denying Snyder's motion to dismiss.

### 2. *Subsequent consent defense*

■ Snyder separately challenges the trial court's refusal to instruct the jury on the defense of subsequent consent. Snyder submitted a subsequent consent instruction that followed the requirements of the subsequent consent defense as set out by the Alaska Supreme Court in *Pruitt v. State, Dep't of Pub. Safety,* 825 P.2d 887, 894 (Alaska 1992). The district court declined to give the instruction in part because it concluded that the defense of subsequent consent could apply only in the case of an "unequivocal," or explicit, refusal to submit to a test. On appeal, Snyder disputes this ruling. However, we find no need for a definitive resolution of the issue here.

■ Assuming that the subsequent consent defense applies in cases involving both explicit and implicit refusals to take a breath test, the defendant's right to an instruction on the defense could be triggered, at a minimum, only by the presence of some evidence supporting the defense. No right to an instruction would arise if the evidence at trial, even when viewed in the light most favorable to the defense, could not conceivably support a rational verdict of acquittal based on the defense. *See Reeve v. State,* 764 P.2d 324, 326 (Alaska App.1988).

In the present case, Snyder consistently manifested a willingness to take the required breath test. Before being charged with refusal, he offered and purportedly attempted to take the test four separate times; each time, he insisted he was doing his best; each time, however, he evidently did little or nothing. When Trooper Spencer terminated the test after the fourth unsuccessful effort, Snyder repeated his offer to try again. Yet this offer was neither qualitatively nor quantitatively different than the offer that Snyder had made immediately before his fourth unsuccessful effort. Snyder volunteered to do nothing new or different. Insisting that he had been doing his best all along, Snyder merely offered to try the same thing again.

At trial, Snyder actively relied on this line of defense. Snyder testified that he had never intended to refuse the breath test and had always been willing to submit to any kind of test of his breath, blood or urine. He claimed, however, that he had injured his chest when his car had collided into the snow berm. According to Snyder, the pain had prevented him from being able to complete the breath test, although he had tried several times and had been willing to try again.

Considering the totality of the evidence in the light most favorable to Snyder, there is simply no rational basis to support a finding that Snyder's initial offers to take the test were made in bad faith but that his final offer to take the test was made in good faith. A juror who harbored a reasonable doubt as to whether Snyder's final offer to take the test was sincere could not rationally have concluded beyond a reasonable doubt that his initial offers were insincere. Conversely, no juror who thought Snyder's first four refusals were insincere could rationally have found his next offer to have been genuine; such a finding would have been unsupported by any evidence and would have been flatly at odds with Snyder's own theory of defense.

While reasonable jurors could certainly have differed on the issue of whether Snyder did or did not in fact refuse to take the Intoximeter test, no evidence or combination of evidence could conceivably have led jurors to conclude that he initially refused but subsequently consented. Under the circumstances of this case, a subsequent consent instruction could have been of no material value to the jury or the defense.

### 3. *Other merit issues*

Having reviewed the record, we conclude that Snyder's remaining claims of error relating to his conviction are meritless and do not warrant discussion.[1]

### SENTENCING ISSUES

Snyder raises an array of contentions against his sentence. At sentencing, the court determined that Snyder had three previous DWI convictions and, for his DWI, sentenced him to 120 days with 60 days suspended, a fine of $1000, and a five-year driver's license revocation. The court declined to consider issuing Snyder a limited license until after Snyder had completed an alcohol treatment program. The court imposed an identical sentence for refusal, noting that, under AS 28.35.032(g)(4) the sentence was required to be consecutive.

### 1. *Consecutive imposition of mandatory minimums*

 Snyder contends on appeal that AS 28.35.030(b)(2)(A) (dealing with DWI) and AS 28.35.032(g)(2)(A) (dealing with refusal)— which provide that the court may not "suspend execution of ... sentence ... except on condition that the person serve the minimum imprisonment—require only that he serve the mandatory minimum term on either of his two charges; in other words, Snyder argues that these provisions allowed the court in his case to suspend the execution of the entire mandatory minimum jail term for either of his offenses, as long as it imposed the mandatory minimum on the other. This argument is unpersuasive. Because each of Snyder's offenses carried a mandatory minimum sentence, and because the imposition of consecutive jail terms was statutorily required, the sentencing court properly determined that Snyder was required to serve the mandatory minimum terms separately.

 Nevertheless, it appears from the record that the sentencing court may have believed that consecutive imposition of mandatory minimum fines and license revocations was also required. To this extent, the court erred. *See Curtis v. State,* 831 P.2d 359 (Alaska App.1992) (construing former AS 28.-35.030(c), which was similar in pertinent part to AS 28.35.032(g), to apply only to jail time). Accordingly, we conclude that a remand will be necessary to allow the district court to reconsider Snyder's consecutive license revocations and fines in light of *Curtis.*

### 2. *Constitutionality of license revocations*

 Snyder contends that revoking his driver's license is unconstitutional as an excessive fine or a cruel and unusual punishment, as a violation of the substantive due process, equal protection, and taking of property clauses, and as a violation of his state constitutional right to rehabilitation. Snyder's argument is that it is irrational and counterproductive for the legislature to authorize or mandate total suspension of a driver's license because issuing a limited driver's license with work-related driving privileges will suffice to protect the public from drunken drivers. We find Snyder's arguments meritless. *See State v. Guarderas,* 589 P.2d 870, 872–73 (Alaska 1979); *McNabb v. State,* 860 P.2d 1294, 1298 (Alaska App.1993); *Burnor v. State,* 829 P.2d 837, 840 (Alaska App. 1992); *Resecker v. State,* 721 P.2d 650, 654

---

**1.** Snyder argues: that the evidence at trial was insufficient to support his conviction for refusal and that the trial court therefore erred in rejecting his motion for judgment of acquittal; that the trial court erred in refusing proposed instructions dealing with the elements of refusal, imposing a presumption against the state for failing to provide an independent blood test, and informing the jury that the police are authorized to provide blood tests to consenting arrestees; and that the trial court erred in failing to grant a challenge for cause against juror Jill Meath or to allow additional peremptory challenges.

(Alaska App.1986); *Dancer v. State,* 715 P.2d 1174, 1179–81 (Alaska App.1986).[2]

### 3. *Reliance on no contest plea*

■ Snyder also contends that it was improper to enhance his mandatory minimum sentences based on his two prior convictions for DWI, because those convictions resulted from pleas of no contest. Snyder relies on *Miller v. State,* 617 P.2d 516 (Alaska 1980), in which the supreme court upheld the defendant's right to plead nolo contendere without admitting a factual basis for a finding of guilt and despite a continued claim of innocence. *Miller,* however, stands only for the proposition that a plea of nolo contendere does not amount to an express admission of guilt. Significantly, the *Miller* court cited with approval its earlier decision in *Lowell v. State,* 574 P.2d 1281, 1284 (Alaska 1978); there the court had stated "that the only forbidden consequence of a nolo plea is its use as an admission in a civil action, and that all other uses of the conviction are permissible as if the plea were of guilty, not nolo." *Id.* at 1285.

*Lowell* is dispositive of Snyder's argument. In sentencing Snyder as a fourth DWI offender, the court did not purport to find that he had admitted previous incidents of DWI; rather, it relied on the fact that he had previously been convicted of the offense.

### 4. *Remaining sentencing issues*

Snyder's remaining sentencing arguments lack merit and require no discussion.[3] Having independently reviewed the entire sentencing record, we conclude that the sentence imposed below was not clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

**2.** We recently held that in an appropriately serious DWI case, a lifetime revocation of a driver's license is not cruel and unusual punishment. *See Dodge v. Anchorage,* 877 P.2d 270 (Alaska App.1994).

**3.** These contentions are: that it is unconstitutional to consider prior DWI convictions as prior convictions for the purpose of enhancing the

### CONCLUSION

The convictions are AFFIRMED. The sentences are AFFIRMED in all respects other than the consecutive imposition of fines and license revocations. This case is REMANDED for reconsideration of the consecutive fines and license revocations in light of *Curtis v. State,* 831 P.2d 359 (Alaska App. 1992).

minimum sentence for refusal; that it violates double jeopardy to both suspend Snyder's driver's license administratively and punish Snyder criminally for his single act of refusal; and that "the trial court's written statement is inconsistent with its oral sentencing order concerning the license revocations."