STATE of Alaska, DEPARTMENT OF PUBLIC SAFETY, Appellant,

v.

Lori C. SHAKESPEARE, Appellee.

No. S–8952.

Supreme Court of Alaska.

June 30, 2000.

---

11. *Zimin v. Zimin,* 837 P.2d 118, 122 (Alaska 1992).

Marilyn J. Kamm, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

David D. Mallet, David D. Mallet Law Office, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## O P I N I O N

EASTAUGH, Justice.

### I. INTRODUCTION

A woman arrested for driving while intoxicated refused to submit to a breath test. She later consented to take a breath test and police officers administered the test to her and obtained test results. Relying on her initial refusal, the Alaska Department of Public Safety administratively revoked her driver's license under Alaska's implied consent statutes. The superior court reversed the administrative revocation, holding that the driver had been permitted to cure her refusal. We affirm the superior court's decision, reasoning that the driver cannot be deemed to have refused after officers actually administered a breath test and obtained potentially probative evidence.

### II. FACTS AND PROCEEDINGS

On October 28, 1997, at around 8:30 p.m., Juneau Police Department Officers Weske and Fermin saw Lori Shakespeare drive up to a Juneau home. When Officer Weske talked with Shakespeare he smelled alcohol and noticed that she had bloodshot eyes and slurred speech. He therefore gave her standard field sobriety tests. She failed the tests and admitted that she had consumed "two beers." The officers arrested her for driving while intoxicated.

They took her to the local Alaska State Trooper detachment for a breath test, arriving there at 9:06 p.m. The officers were about nine minutes into a required fifteen-minute observation period when Shakespeare said that she had to use the restroom. Officer Weske allowed her to enter the restroom but told her that the fifteen-minute observation period would have to start over. Both officers were male and could not accompany her into the restroom to ensure that she put nothing in her mouth.

After Shakespeare returned and thirteen more minutes had passed, Officer Weske told her that he was going to start the Intoximeter. Shakespeare again said that she had to use the restroom. Officer Weske again allowed her to enter the restroom, but sent a female dispatcher with her to ensure that Shakespeare put nothing in her mouth. When Shakespeare came out, Officer Weske started the Intoximeter. Shakespeare asked if the fifteen minutes had to start over and Officer Weske said, no, because the dispatcher had been with her. Shakespeare then refused to take the test. Officer Fermin read an implied consent warning form to Shakespeare at around 9:50 p.m. and allowed Shakespeare to read the notice and warning on the form for herself. Shakespeare still refused to take a breath test but stated that she was willing to give a blood sample.

The Juneau Police Department had recently adopted a policy prohibiting its officers from charging a driver with criminal refusal if the driver refused to take a breath test but

agreed to a take an independently administered blood test. After Officer Weske called another officer to verify that policy, he explained to Shakespeare that if she took the blood test, the police would not charge her criminally, but the Alaska Department of Public Safety would nonetheless administratively revoke her driver's license. Shakespeare then signed the notice and revocation order form, acknowledging that she read and understood it, and surrendered her license.

The officers took Shakespeare to the hospital, arriving there at around 10:19 p.m. After learning that her own doctor would not administer the independent blood test, Shakespeare said that she would rather take the breath test. This request came within thirty minutes after her refusal to give a breath sample at the trooper detachment. Officer Weske told her that he thought her consent was too late, but he called an assistant district attorney for advice and was told to proceed with the blood test and also to administer the breath test if Shakespeare still wanted to be given that test. The nurse had difficulty drawing Shakespeare's blood and it took about an hour to obtain a blood sample. The two officers and Shakespeare then drove to the Juneau Police Department. They again waited the required fifteen minutes, and Shakespeare took the breath test at 11:42 p.m. The test results showed that Shakespeare's breath contained .070 grams of alcohol per 210 liters of breath; this was under the legal limit for driving in Alaska.[1]

Although Shakespeare had finally submitted to a breath test, the Department of Public Safety, Division of Motor Vehicles, administratively revoked her driver's license. Shakespeare requested and received a hearing, after which the hearing officer affirmed the license revocation.[2]

Shakespeare appealed to the superior court, which held that by accommodating Shakespeare's request to take a breath test, the officers had allowed her to cure her prior refusal. The superior court remanded the case to the Department of Public Safety and directed the agency to reinstate Shakespeare's license. The department appeals.[3]

## III. DISCUSSION

### A. Standard of Review

We review the Department of Public Safety's revocation of Shakespeare's driver's license independently of the superior court, which was acting as a court of intermediate appeal.[4] We review issues of law not involving agency expertise, such as statutory interpretation and constitutional issues, under a "substitution of judgment" standard.[5] Application of this standard permits a reviewing court to substitute its own judgment for the agency's, even if the agency's decision had a reasonable basis in law.[6]

### B. Implied Consent Law and Administrative Revocation

■ Under Alaska's implied consent statutes, drivers are considered to have given consent to a breath test.[7] A law enforcement officer may therefore ask a person to submit to a breath test if the officer has reasonable grounds to believe that the person has operated a vehicle while intoxicated.[8] If the driver refuses to submit to the test, his or her driver's license may be administratively revoked by the Department of Public Safety and the driver may also be subject to crimi-

---

1. *See* AS 28.35.030(a)(2) ("A person commits the crime of driving while intoxicated ... when, as determined by a chemical test taken within four hours after the alleged offense was committed ... there is 0.10 grams or more of alcohol per 210 liters of the person's breath.").

2. The Department of Administration conducted the hearing. *See* AS 28.05.141; 13 Alaska Administrative Code (AAC) 67.290–.310.

3. We note with disapproval that the appellant's excerpt of record fails to include the superior court order. *See* Alaska R.App. P. 210(c)(2).

4. *See Barcott v. Department of Pub. Safety,* 741 P.2d 226, 228 (Alaska 1987).

5. *See Church v. State, Dep't of Revenue,* 973 P.2d 1125, 1127 (Alaska 1999).

6. *See Earth Resources Co. v. State, Dep't of Revenue,* 665 P.2d 960, 965 (Alaska 1983).

7. *See* AS 28.35.031(a).

8. *See id.*

nal penalties.[9] For the department's administrative revocation to be effective, the officer must first read and deliver proper notice to the driver and then must seize the license for delivery to the department.[10] The purpose of the administrative revocation statute is to compel drivers to submit to a breath test that provides evidence of intoxication.[11]

■ If a driver is arrested for driving while intoxicated, the arrestee has a right to an independent blood test.[12] But this right does not give a driver a choice of tests under the implied consent statutes.[13]

■ We have not considered whether the Department of Public Safety may administratively revoke a license under the implied consent statutes if the driver, after first refusing to submit to a breath test, ultimately consents to be tested and is then actually tested. But we have considered the circumstances in which a driver may affirmatively defend against an administrative license revocation by asserting that he or she has "cured" the refusal even though a test was not ultimately administered.

In *Pruitt v. State, Department of Public Safety*,[14] we first considered whether a person should be allowed to "cure" a refusal to take a breath test by subsequently consenting.[15] We adopted a flexible test and concluded that the licensee must prove by a preponderance of the evidence:

[T]hat the subsequent consent occurred within a reasonable time after the prior first refusal; that the test administered following the subsequent consent will still be accurate; that the test will not result in any substantial expense or inconvenience to the police; and that the arrestee has been in continuous custody of the arresting officer and under observation for the entire time.[16]

About thirty minutes passed between Shakespeare's explicit refusal to be tested and her subsequent consent. But because she consented at the hospital, the officers had to take Shakespeare to the Juneau Police Department to administer the breath test. *Pruitt* concerned an arrestee who sprayed breath spray down his throat before he consented to take a breath test, requiring an additional twenty-minute observation period before he could be tested.[17] We stated that "such delay would pose a substantial burden on the officer who then had custody of Pruitt since the officer would have been prevented from fulfilling other duties."[18]

Similarly, it appears that Shakespeare's vacillation substantially burdened these police officers. But the circumstances here render the officers' pre-testing burden irrelevant. At least when officers actually administer a breath test and obtain potentially probative evidence[19] after a driver with-

9. See AS 28.35.031–.032; AS 28.15.165.

10. See AS 28.15.165(a)-(b).

11. See *Lundquist v. Department of Pub. Safety*, 674 P.2d 780, 785 (Alaska 1983).

12. See *Snyder v. State*, 930 P.2d 1274, 1277–78 (Alaska 1996).

13. See AS 28.15.165(a); AS 28.33.031(a); AS 28.35.031(a), (g); *Snyder v. State*, 879 P.2d 1025, 1027 (Alaska App.1994), *rev'd on other grounds*, 930 P.2d 1274 (Alaska 1996). If not impracticable, police must accommodate a request for an independent blood test and assist an arrestee in obtaining one because of the arrestee's due process right to obtain exculpatory evidence. *See Snyder*, 930 P.2d at 1277–78. Under Alaska's implied consent statutes, police may, but are not required to, accommodate a reasonable request to accept another type of test. *See Snyder*, 879 P.2d at 1027.

14. 825 P.2d 887 (Alaska 1992).

15. *See id.* at 892.

16. *Id.* at 894.

17. *See id.* at 894–95.

18. *Id.*

19. Our analysis does not turn on whether test results are inculpatory or exculpatory. Shakespeare was tested about three hours and fifteen minutes after officers saw her drive. Her test provided evidence potentially probative of the issue of intoxication. *See* AS 28.35.030(a) ("A person commits the crime of driving while intoxicated if the person operates or drives a motor vehicle ... (2) when, as determined by a chemical test taken within four hours after the alleged offense was committed, ... there is 0.10 grams or more of alcohol per 210 liters of the person's breath...."). When tested, Shakespeare's breath was below the statutory limit. Courts have recognized that litigants may adduce evi-

draws a prior refusal, it would be unfair and inconsistent to treat the earlier refusal as justification for administratively revoking the driver's license.

We therefore hold that when a DWI arrestee initially refuses a breath test, and then changes his or her mind and offers to take the test, the police must decide whether to permit him or her to give a breath sample. If the police administer the test and obtain potentially probative results, the arrestee's license may not be administratively revoked for the prior refusal to be tested. If the police do not administer a test, the department may revoke the license unless the arrestee meets the burden of proving, under *Pruitt,* that he or she cured the refusal. Here the officers permitted the driver to give a breath sample. Her prior refusal, therefore, cannot be the basis for administratively revoking her license.

## IV. *CONCLUSION*

Because Shakespeare, with the officers' permission, actually gave a breath sample providing potentially probative evidence, her license may not be administratively revoked despite her earlier refusal to be tested. We therefore AFFIRM the superior court's decision remanding the case to the Department of Public Safety for reinstatement of Shakespeare's license.

**P.G. and R.G., Appellants and Cross–Appellees,**

v.

---

dence extrapolating backwards from breath alcohol test results to determine a person's breath alcohol at an earlier time. *See Hoyle v. Peterson,* 216 Neb. 253, 343 N.W.2d 730, 734 (1984). We need not consider here the effect of allowing a driver to be tested more than four hours after the alleged offense.