**Julianne MOSSAK, Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C4–88–1590.

Court of Appeals of Minnesota.

Feb. 7, 1989.

Review Denied April 10, 1989.

Steven J. Meshbesher, Meshbesher, Singer & Spence, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joseph Plumer, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by HUSPENI, P.J., and CRIPPEN and KALITOWSKI, JJ., without oral argument.

## OPINION

CRIPPEN, Judge.

Appellant challenges the trial court's decision to sustain revocation of her driver's license for refusing a breath test after an implied consent advisory. Although police permission could have and undoubtedly should have been given for recantation of

appellant's refusal of a breath test, the revocation of appellant's license is lawful.

## FACTS

At 3:40 a.m. on April 20, 1988, following her arrest on an accusation of driving while under the influence, appellant Julianne Mossak was asked by a police officer if she would permit testing of her breath. Mossak said she wanted to speak with someone before consenting or refusing, and she was told that she had to make the decision on her own. Mossak then refused the test. Five to ten minutes later, after completing a five minute telephone conversation with a friend, Mossak asked to take the test but was refused that opportunity. By the time appellant announced her consent, the arresting officer had completed his implied consent paper work and was on his way out of the building where the advisory occurred.

## ISSUE

Did appellant successfully expunge her refusal for breath testing?

## ANALYSIS

Appellant acknowledges that prior decisions restrict her opportunity to withdraw a refusal for testing. She contends, however, that the lapse of time before her consent was so short and the inconvenience to the police so minimal that her consent effectively canceled the earlier refusal.

As appellant contends, some jurisdictions have adopted a flexible rule on withdrawal of refusal. These holdings are illustrated by this announcement of the Arizona Court of Appeals:

Thus, we hold that a subsequent consent should be honored except under the following circumstances. The consent may not be made after the defendant is no longer in custody. Prior to that point, the subsequent consent need not be honored where (1) it would result in a substantial inconvenience or expense to the police; or (2) the testing equipment is not readily available; or (3) the test results would not be accurate. If any one of the above conditions is not met the test need not be given.

*Gaunt v. Motor Vehicle Division, Department of Transportation, State of Arizona*, 136 Ariz. 424, 428, 666 P.2d 524, 528 (Ariz.Ct.App.1983), *pet. for rev. denied* (Ariz. June 30, 1983).

In contrast, other jurisdictions have opted for an absolute rule, questioning the reasonableness "of having police officers turn aside from other duties to administer a test after the driver has initially refused." *State v. Corrado*, 184 N.J.Super. 561, 568, 446 A.2d 1229, 1232 (N.J.App.Div. 1982). The New Jersey court added:

Having in mind the remedial purpose of the statute and the rapidity with which the passage of time and the physiological processes tend to eliminate evidence of ingested alcohol in the system, it is sensible to construe the statute to mean that anything substantially short of an unqualified unequivocal assent to the officer's request that the arrested motorist take the test constitutes a refusal to do so. * * * The occasion is not one for debate, but rather for a simple "yes" or "no" to the officer's request.

*Id.* at 569, 446 A.2d at 1233.

Minnesota statutes and judicial precedents preclude us from applying a flexible rule such that a refusal could not be found in the circumstances of this case.

In 1971, the Minnesota Supreme Court quoted with approval a trial judge's observation that a refusal cannot be avoided by a later offer to take a test "where testing equipment is not readily available and at a time the request or offer is made to an officer not qualified to give such tests." *State v. Palmer*, 291 Minn. 302, 308, 191 N.W.2d 188, 191 (1971). Thus, in *Palmer*, refusal was not avoided by consent announced over an hour after the driver was taken into custody and given an implied consent advisory. Five years later, the supreme court affirmed revocation where the driver's consent occurred 30 minutes after his refusal and where the arresting officer had already completed his paper work and left the place where the advisory occurred. *State, Department of Public Safety v.*

*Early,* 310 Minn. 428, 247 N.W.2d 402 (1976).

While *Palmer* and *Early* may suggest the importance of a showing of inconvenience of the arresting officer, Minnesota's implied consent statute is worded in absolute terms.[1] "If a person refuses to permit a test, none shall be given." Minn.Stat. § 169.123, subd. 4 (1988). As the supreme court observed in *Palmer:* "There is no provision in the statute as to how much time [the driver] may have to make up his mind." *Palmer,* 291 Minn. at 308, 191 N.W.2d at 191. In 1985, dealing with a driver's assertion of her right to consult with counsel before deciding whether to consent to testing, the supreme court refused to impose a requirement which was contradicted by absolute language of the implied consent statute. *Nyflot v. Commissioner of Public Safety,* 369 N.W.2d 512 (Minn.1985), *appeal dismissed,* 474 U.S. 1027, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985). The court explained that the driver has no constitutional right to refuse testing, but has only those rights created by the legislature. *Id.* at 517.

*Nyflot* is also important for its mostly incidental handling of the question of a driver's change of heart on refusal. The driver there, after first refusing a breath test, offered to take one after talking with her attorney. Although the court observed that the officer began taking down the testing machine after the initial refusal, the court reported no significant delay between the time of refusal and the time of consent. In a footnote, the court dealt with the attempted avoidance of the refusal with this observation:

> Nyflot's expression of willingness to take the test after she talked with her attorney was an ineffective attempt to avoid the consequences of her refusal. *State, Dept. of Public Safety v. Early,* 310 Minn. 428, 247 N.W.2d 402 (1976); *State v. Palmer,* 291 Minn. 302, 308–09, 191 N.W.2d 188, 191–92 (1971) ("the testing officers should not be required 'to

await the driver's convenience of a different time or place' to submit to the statutory requirement.").

*Id.* at 517 n. 4. *See Anderson v. Commissioner of Public Safety,* 379 N.W.2d 678 (Minn.Ct.App.1986) (license revocation for refusal upheld where driver tried to revoke his refusal after 15 minutes and after the officer had completed implied consent paper work).

Here the driver was told she would have to make a decision on testing without consultation. Her decision was announced and the officer completed his implied consent paper work. Even if precedents leave room for some flexibility on the withdrawal of consent, the holding and the language of the supreme court in *Nyflot* convinces us that appellant's refusal was not expunged by her later offer to take a test. As the supreme court observed in *Palmer,* "[w]hile defendant's custodians might well have permitted him to take the test after he had changed his mind, we cannot say that the refusal was fatal to the revocation proceedings." *Palmer,* 291 Minn. at 308, 191 N.W.2d at 191.

We observe that consent for testing serves the evident purpose of the implied consent statute, and that law enforcement officers serve minimum public expectations by being flexible in disregarding a tentative refusal which is promptly withdrawn. Nevertheless, we find no basis for an appellate court mandate for flexibility such as would expunge appellant's refusal in the circumstances here.

### DECISION

The trial court did not err in sustaining the Commissioner's revocation of appellant's driver's license.

AFFIRMED.

---

**1.** We also observe the implications that there is some room for recantation of refusal in *Palmer* and *Early* may be related to the fact that the law then permitted the driver to consult with counsel before making an election.