Sarah Starr PARSONS, Petitioner,
Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C4–92–508.

Court of Appeals of Minnesota.

Aug. 11, 1992.

Thomas E. Bauer, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Nancy J. Bode, Asst. Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by FORSBERG, P.J., and SHORT and HARTEN, JJ.

OPINION

SHORT, Judge.

The driver's license of Sarah Starr Parsons was revoked pursuant to Minn.Stat. § 169.123, subd. 4 (1990). Upon her petition for review of that revocation, the trial court ordered the revocation rescinded. On appeal, the Commissioner of Public Safety argues Parsons' limited right to counsel was vindicated when she was provided access to a telephone and telephone books and was allowed over forty minutes in which to consult an attorney. We agree and reverse.

## FACTS

Parsons was arrested for driving while under the influence of alcohol and was transported to the Eden Prairie Police Department for testing. At 1:36 a.m., the arresting officer read the standard implied consent advisory to Parsons. Parsons told the arresting officer she understood the advisory form and wished to consult with an attorney.

At 1:39 a.m., the officer provided Parsons with a telephone and the Minneapolis white and yellow page telephone directories. Parsons telephoned a non-lawyer friend and talked to him until 1:58 a.m. Parsons told the officer her friend would contact an attorney for her.

At 2:17 a.m., the officer advised Parsons she would have to make the decision on her own. After some discussion, Parsons refused to submit to testing. The refusal was recorded at 2:28 a.m., over forty minutes after Parsons was provided a telephone. Nine minutes later, an attorney called and advised Parsons to submit to testing. The officer stated the refusal was not subject to reconsideration and refused to administer the test. Parsons' driver's license was revoked for refusing testing under the implied consent law.

## ISSUES

I. Did the police officer violate Parsons' constitutional right to consult with an attorney prior to deciding to take an alcohol concentration test?

II. Did Parsons' subsequent change of mind cure her earlier refusal to take the test?

## ANALYSIS

■ The question of whether a person has been allowed a reasonable time to consult with an attorney is a mixed question of law and fact. Establishing the historical events is a question of fact. Once those facts are established, their significance becomes a question of law. *See, e.g., Berge v. Commissioner of Pub. Safety*, 374 N.W.2d 730, 732 (Minn.1985). The Commissioner challenges only the trial court's application of law to the facts, so our review of whether Parsons was allowed a reasonable time to consult with an attorney is de novo.

### I.

■ The availability of a driver's right to consult an attorney prior to deciding whether to take an alcohol concentration test has evolved over time. In *Prideaux v. State, Dep't of Pub. Safety*, 310 Minn. 405, 419, 247 N.W.2d 385, 393 (1976), the Supreme Court found a statutory right to counsel existed. Several cases addressed the issue of whether a driver was given a reasonable amount of time in which to exercise that statutory right. *See State, Dep't of Pub. Safety v. Kneisl*, 312 Minn. 281, 286, 251 N.W.2d 645, 648–49 (1977) (where attorney arrives promptly, driver can consult as long as delay does not affect validity of testing); *State, Dep't of Pub. Safety v. Early*, 310 Minn. 428, 430, 247 N.W.2d 402, 403 (1976) (where driver initially contacts attorney, refuses testing, subsequently requests testing thirty minutes later after attorney arrives, and the officer is no longer available, the right to consult attorney was protected); *Jones v. Commissioner of Pub. Safety*, 364 N.W.2d 854, 856–57 (Minn.App.1985) (where driver given telephone and time to call attorney, police not required to wait twenty minutes for attorney to arrive at police station); *Clough v. Commissioner of Pub. Safety*, 360 N.W.2d 428, 430 (Minn.App.1985) (where juvenile waited twenty minutes for call back from attorney and officer refused to allow juvenile to call parents for name and number of an attorney, his right to consult an attorney was violated under totality of the facts); *Martin v. Commissioner of Pub. Safety*, 358 N.W.2d 734, 736 (Minn.App.1984) (where driver wished to delay testing pending attorney's arrival, police not required to delay testing for an unspecified period of time); *Eveslage v. Commissioner of Pub. Safety*, 353 N.W.2d 623, 627 (Minn.App.1984) (where driver given telephone and he was unable to contact his own attorney, police not required to suggest other names and the driver's right to consult an attorney was protected).

Because of a statutory amendment to the implied consent advisory in 1984, the Supreme Court found a driver no longer had a statutory right to counsel before submitting to testing. *See Nyflot v. Commissioner of Pub. Safety*, 369 N.W.2d 512, 515 (Minn.1985), *appeal dismissed*, 474 U.S. 1027, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985). The court specifically rejected the driver's claim to a federal constitutional right to consult with counsel prior to deciding whether to submit to testing. *Id.* at 513. In *Friedman v. Commissioner of Pub. Safety*, 473 N.W.2d 828, 835 (Minn.1991), the Supreme Court addressed the driver's right to counsel under Minn. Const. art. I, § 6, and held an individual has a limited right to obtain legal advice before deciding whether to submit to chemical testing. The question of what constitutes a reasonable time to exercise this state constitutional right is now before this court in several cases. *See, e.g., Kuhn v. Commissioner of Pub. Safety*, —— N.W.2d —— (Minn.App. Aug. 11, 1992).

█ In analyzing this issue, we recognize a number of competing factors. First, the choice of whether to submit to the chemical testing procedures is a very important one to an individual driver. *Friedman*, 473 N.W.2d at 832. The driver must make a critical and binding decision that will affect subsequent proceedings. *Prideaux*, 310 Minn. at 411, 247 N.W.2d at 389–90. Second, the purpose of the right to counsel is to protect lay persons who lack both skill and knowledge to defend themselves. *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). When asked to submit to a chemical test, a driver will look for guidance. An attorney, not a police officer, is the appropriate source of legal advice at this critical stage. *Friedman*, 473 N.W.2d at 833. Third, alcohol in the blood stream dissipates at an average of .015 percent per hour. *See* Donald H. Nichols, *The Drinking Driver in Minnesota* 113–20 (2d ed. 1989). Proof of the offense is evanescent, and deterioration of evidence concerns the legislature and the courts. *Friedman*, 473 N.W.2d at 835. A driver's rights should not be interpreted so as to interfere unreasonably with the evidence gathering purposes of the statute. *State, Dep't of Pub. Safety v. Wiehle*, 287 N.W.2d 416, 419 (Minn.1979). Fourth, the legislature wanted to coerce drivers into taking the implied consent test. *Prideaux*, 310 Minn. at 409, 247 N.W.2d at 388. Testing ensures that scientific evidence of the driver's intoxication will be available at trial. *See State, Dep't of Highways v. Schlief*, 289 Minn. 461, 462, 185 N.W.2d 274, 276 (1971). Fifth, the implied consent law is remedial in nature, and the laws are liberally interpreted in favor of the public interest, and against the private interests of the drivers. *State Dep't of Pub. Safety v. Juncewski*, 308 N.W.2d 316, 319 (Minn.1981). And sixth, the police officers must be allowed to return to the streets to serve the public interest. *See Early*, 310 Minn. at 430, 247 N.W.2d at 403. In the final analysis, it is from the totality of the facts that one judges whether a driver had the opportunity to exercise the constitutional right to consult with an attorney.

In this case, the officer decided forty minutes was a reasonable amount of time for Parsons to exercise her constitutional right to consult an attorney before deciding to submit to a chemical test. The record demonstrates (a) Parsons was provided a telephone and telephone directories; (b) she was free to call anyone she wanted; (c) she had access to the telephone for approximately 40 minutes; (d) she telephoned a non-lawyer friend and spent about 13 minutes talking to him; and (e) she understood her time to consult with counsel was limited. Under these facts, we believe it was reasonable for the police to require Parsons to make a decision regarding testing in the absence of counsel.

II.

█ Parsons also argues her constitutional right to consult with an attorney was not protected because her attorney called her at the police station nine minutes after the refusal was recorded, and she was then willing to take the test. We disagree. Once a driver refuses testing a subsequent change of heart does not require the officer

to provide testing. *Nyflot,* 369 N.W.2d at 517. A driver is bound by the decision initially made. *See State v. Palmer,* 291 Minn. 302, 308, 191 N.W.2d 188, 191 (1971); *Schultz v. Commissioner of Pub. Safety,* 447 N.W.2d 17, 19 (Minn.App.1989); *cf. Mossak v. Commissioner of Pub. Safety,* 435 N.W.2d 578, 579–80 (Minn.App.1989), *pet. for rev. denied* (Minn. Apr. 10, 1989). Our concern regarding the deterioration of evidence and the efficient use of police efforts requires the imposition of finality to the initial decision by the driver. Thus, Parsons' refusal was not cured by a later offer to submit to testing. However, we encourage officers to be flexible and to disregard a refusal which is promptly withdrawn. *See Schultz,* 447 N.W.2d at 17; *Mossak,* 435 N.W.2d at 580.

### DECISION

Parsons' constitutional right to consult with an attorney before deciding whether to submit to a chemical test under the Minnesota Constitution was vindicated in this case. In addition, her refusal was not cured by a later offer to submit to testing. The order of the trial court reinstating Parsons' driving privileges is reversed.

Reversed.