**Thomas Paul PALME, Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. CX–95–1337.

Court of Appeals of Minnesota.

Dec. 26, 1995.

Review Denied Feb. 27, 1996.

Daniel M. Mohs, Daniel M. Mohs & Associates, Ltd., Minneapolis, for Appellant.

Hubert H. Humphrey, III, Attorney General, Peter R. Marker, Assistant Attorney General, St. Paul, for Respondent.

Considered and decided by HARTEN, P.J., and SCHUMACHER and FORSBERG *, JJ.

## OPINION

HARTEN, Judge.

Appellant Thomas Paul Palme challenges the district court order sustaining the revocation of his driver's license for refusal to submit to alcohol testing, arguing that he should have been allowed to cure his refusal and that his right to counsel was not vindicated. We affirm.

## FACTS

The facts are generally undisputed. On August 20, 1994, at approximately 8:30 p.m., appellant Thomas Paul Palme was arrested for driving under the influence of alcohol. He was thereupon transported to the police station. After the arresting officer read Palme the implied consent advisory, Palme indicated that he wished to contact an attorney before deciding whether to submit to alcohol testing. At 8:50, Palme was placed in a room with a telephone and telephone books.

At 9:00, when the officer checked on Palme, Palme stated that he had reached an attorney and that the attorney had told Palme to wait for a call from a criminal defense attorney who would be notified for him. The officer continued observing Palme, who did not use the telephone for the next 19 minutes. At 9:19, when the officer re-entered the room, Palme told the officer that he

could not submit to a test because he was still awaiting a call from the attorney. The officer interpreted Palme's answer as a refusal and completed the implied consent advisory. Palme was then placed in a jail cell.

At 9:32, the defense attorney telephoned Palme at the station. The attorney had been paged at 9:12 and 9:26, but he did not notice those pages until 9:30. At 9:38, Palme, acting upon the advice of the attorney, informed the officer that he wished to submit to alcohol testing, but the officer denied Palme's request.

The district court sustained the revocation, ruling that Palme's right to counsel had been vindicated. This appeal resulted.

## ISSUES

1. Should Palme have been allowed to cure his initial refusal to submit to alcohol testing?

2. Was Palme's limited right to counsel vindicated?

## ANALYSIS

1. Palme argues that he should have been allowed to cure his initial refusal to submit to alcohol testing.

In Minnesota, the general rule is that an officer is not required to honor a driver's consent to take the test after that driver's initial refusal unless the subsequent consent is immediate. *Ekong v. Commissioner of Pub. Safety*, 498 N.W.2d 319, 322 (Minn.App. 1993). The seminal case on this issue is *Mossak v. Commissioner of Pub. Safety*, 435 N.W.2d 578 (Minn.App.1989), *review denied* (Minn. Apr. 10, 1989). In *Mossak*, the driver refused to submit to testing after being told that she could not speak with anyone first. *Id.* at 579. Five to ten minutes later, however, after speaking with a friend, the driver asked to take the test, but the officer refused her request. *Id.* We noted that some jurisdictions had adopted a flexible rule for curing an initial refusal, whereby a subsequent consent had to be honored if certain conditions

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const.

art. VI, § 10.

were met. *Id.* Other states, however, concerned with dissipation of the evidence and the wisdom of requiring officers to neglect other duties to administer a test after an initial refusal, followed the absolute rule that an officer need not honor a subsequent consent. *Id.*

In *Mossak,* following Minnesota Supreme Court precedent, we applied the absolute rule. *Id.* at 579–80 (citing *State v. Palmer,* 291 Minn. 302, 308, 191 N.W.2d 188, 191 (1971) and *State, Dep't of Pub. Safety v. Early,* 310 Minn. 428, 247 N.W.2d 402 (1976)). We also found support in the language of the implied consent statute, which stated that "[i]f a person refuses to permit a test, none shall be given." *Id.* at 580; (citing Minn.Stat. 169.123, subd. 4 (1988)). We stressed that the driver had been told that she would have to decide on testing without consultation [1] whereupon she made her decision. *Id.* We concluded:

> We observe that consent for testing serves the evident purpose of the implied consent statute, and that law enforcement officers serve minimum public expectations by being flexible in disregarding a tentative refusal which is promptly withdrawn. Nevertheless, we find no basis for an appellate court mandate for flexibility such as would expunge appellant's refusal in the circumstances here.

*Id.*

In *Schultz v. Commissioner of Pub. Safety,* 447 N.W.2d 17 (Minn.App.1989), we noted our adoption of the absolute rule in *Mossak. Schultz,* 447 N.W.2d at 18–19. Nevertheless, in *Schultz* we held that even under the "bright line" test, the driver would not be held to a refusal when he immediately changed his mind and consented to testing. *Id.* at 19. We thus distinguished *Mossak* and thereby added a corollary to the general rule:

> [A]ppellant's change of mind was almost immediate, and was not separated from his

initial response by any substantial time, place, or a telephone call to counsel or a friend.

*Id.*

We next applied the rule in *Parsons v. Commissioner of Pub. Safety,* 488 N.W.2d 500 (Minn.App.1992). In that case, a friend told the driver that she would contact an attorney for the driver, and the driver relayed this information to the officer. *Id.* at 501. Eventually, the officer demanded a decision, and the driver refused; nine minutes later, however, the attorney called and advised the driver to consent to testing, but the officer did not allow the driver to cure her initial refusal. *Id.* In reinstating the license revocation, we emphasized the rationale behind the absolute rule:

> Once a driver refuses testing a subsequent change of heart does not require the officer to provide testing. A driver is bound by the decision initially made. Our concern regarding the deterioration of evidence and the efficient use of police efforts requires the imposition of finality to the initial decision by the driver. Thus, Parsons' refusal was not cured by a later offer to submit to testing. However, we encourage officers to be flexible and to disregard a refusal which is promptly withdrawn.

*Id.* at 502–03 (citations omitted).

 Palme argues that we should abandon the absolute rule and adopt a flexible rule because refusal is now a crime. *See* Minn. Stat. § 169.121, subd. 1a (1994).[2] Palme cites *Pruitt v. State, Dep't of Pub. Safety,* 825 P.2d 887 (Alaska 1992), in which the Alaska Supreme Court adopted a flexible rule for allowing a driver to cure an initial refusal to submit to testing. *Id.* at 894. That court was persuaded by considerations of fairness to the driver in light of the harsh consequences attending a refusal and by recognition of the legislative purpose of encouraging tests. *Id.* It emphasized that refusal was a crime in Alaska. *Id.* Consequently, the court

---

1. At that time, the supreme court had not yet recognized the state constitutional right to counsel. *See Friedman v. Commissioner of Pub. Safety,* 473 N.W.2d 828, 835 (Minn.1991).

2. In 1989, the legislature made refusal a crime for certain repeat offenders. 1989 Minn. Laws ch. 290, art. 10, § 2. The statute was amended in 1992 to make it a crime for *anyone* to refuse to submit to testing. 1992 Minn. Laws ch. 570, art. 1, § 6.

adopted a flexible rule, whereby a driver could cure an initial refusal if (1) the subsequent consent occurs within a reasonable time after the refusal; (2) the test would still be accurate; (3) the test would not result in substantial expense or inconvenience to police; and (4) the driver has been in custody and under observation for the entire time. *Id.*

Palme urges this court to adopt a similar rule in light of the legislation making refusal a crime. Palme argues that the absolute rule undermines the legislature's intent to encourage testing. He asserts that police should have no interest in promoting crime. Finally, he contends that the absolute rule gives police officers too much discretion in deciding whether a driver commits the crime of refusal.

We decline Palme's invitation to abandon the absolute rule. The concerns about dissipation of evidence and police efficiency, which led to the original adoption of the absolute rule in Minnesota, did not become less compelling when refusal became a crime. The implied consent statute still states that no test shall be given after a refusal. Minn. Stat. § 169.123, subd. 4 (1994). Although encouraging testing may be one purpose of the implied consent statute, another purpose is to compel a speedy decision whether to take the test:

> A prompt decision to consent to the test is in keeping with the purpose of the statute, which is to protect the public from the hazards of intoxicated drivers.

*Ekong*, 498 N.W.2d at 322. Moreover, making refusal a crime adds a deterrent to refusal and encourages testing. Finally, although Palme prefers that police officers have less discretion in this area, a rule requiring officers to assess various additional factors would actually give them *more* discretion.

We reiterate that officers are encouraged to allow a driver to cure an initial refusal when appropriate. Nevertheless, we hold that the officer did not improperly deny Palme's request to take an alcohol test after his initial refusal.

■ 2. Palme also argues that his limited right to counsel was not vindicated. The Minnesota Constitution affords a driver "a reasonable opportunity to obtain legal advice before deciding whether to submit to chemical testing." *Friedman v. Commissioner of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991).

> The right to counsel will be considered vindicated if the person is * * * given a reasonable time to contact and talk with counsel. If counsel cannot be contacted within a reasonable time, the person may be required to make a decision regarding testing in the absence of counsel.

*Id.* (quoting *Prideaux v. State, Dep't of Pub. Safety*, 310 Minn. 405, 421, 247 N.W.2d 385, 394 (1976)). The standard of review is as follows:

> The question of whether a person has been allowed a reasonable time to consult with an attorney is a mixed question of law and fact. Establishing the historical events is a question of fact. Once those facts are established, their significance becomes a question of law.

*Parsons*, 488 N.W.2d at 501. Because the facts are not in dispute here, we review de novo the district court's application of the law. *See id.*

■ Whether a driver had a reasonable opportunity to consult with an attorney must be determined from the totality of the facts. *Id.* As a threshold matter, "the driver must make a good faith and sincere effort to reach an attorney." *Kuhn v. Commissioner of Pub. Safety*, 488 N.W.2d 838, 842 (Minn.App. 1992), *review denied* (Minn. Oct. 20, 1992).

In *Parsons*, we decided that the driver's right to counsel had been vindicated upon the following facts:

> (a) Parsons was provided a telephone and telephone directories; (b) she was free to call anyone she wanted; (c) she had access to the telephone for approximately 40 minutes; (d) she telephoned a non-lawyer friend and spent about 13 minutes talking to him; and (e) she understood that her time to consult with counsel was limited.

*Parsons*, 488 N.W.2d at 502.

In *Kuhn*, we affirmed the district court's rescission of the driver's revocation, holding that 24 minutes was not enough time to

contact an attorney in light of the early morning hour and the driver's diligent efforts. *Kuhn,* 488 N.W.2d at 842. In that case, the driver had attempted to contact an attorney three times, and no evidence indicated that the driver was stalling or had decided on his own to discontinue his efforts to reach an attorney. *Id.* at 839. In distinguishing prior cases, we observed that

> refusing to try to contact more than one attorney or giving up trying to contact an attorney is fundamentally different [from] making a continued good-faith effort to reach an attorney.

*Id.* at 841.

■ We hold that Palme's right to counsel was vindicated. Like the driver in *Parsons,* Palme could have done more than just wait by the telephone—he could have called the first attorney back to inform and inquire further, or he could have tried to reach a different attorney himself. A driver cannot be permitted to wait indefinitely for a call that may never come, and an officer must be allowed to reasonably determine that the driver has had enough time.[3]

### DECISION

The district court did not err in sustaining the revocation of Palme's driver's license. Although refusal to submit to alcohol testing is a crime, the officer was not required to honor Palme's eventual consent after Palme had initially refused testing; Palme's limited right to counsel was vindicated.

**Affirmed.**

**3.** At oral argument, Palme's attorney referred to the issue of whether Palme's refusal was reasonable. This issue was not presented in Palme's

Statement of the Case or his principal brief and therefore it is not properly before us on appeal.