*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0805**

Peter Alan Krech, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed April 20, 2015
Affirmed
Johnson, Judge**

Dakota County District Court
File No. 19WS-CV-13-1476

Jeffrey S. Sheridan, Strandemo, Sheridan & Dulas, P.A., Eagan, Minnesota (for appellant)

Lori Swanson, Attorney General, Kristi Nielsen, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Johnson, Presiding Judge; Halbrooks, Judge; and Larkin, Judge.

# UNPUBLISHED OPINION

**JOHNSON**, Judge

The commissioner of public safety revoked Peter Alan Krech's driver's license after he was arrested for driving while impaired and a breath test showed that his alcohol concentration exceeded .08. Krech sought judicial review of the commissioner's

revocation. The district court denied Krech's petition to rescind the revocation on the grounds that his limited right to counsel was vindicated and that he voluntarily consented to the breath test. We affirm.

**FACTS**

At 2:05 a.m. on September 6, 2013, Officer Nels Engstrom of the Inver Grove Heights Police Department was on patrol when he stopped Krech's vehicle. During the stop, Officer Engstrom came to suspect Krech of driving while impaired (DWI), and he conducted a road-side investigation. Officer Engstrom arrested Krech for DWI and transported him to the Inver Grove Heights police station.

At the station, Officer Engstrom read Krech the implied-consent advisory, which informed him that refusal to take a chemical test is a crime and that he had the right to consult with an attorney. Krech said that he understood the advisory and wished to consult with an attorney. Officer Engstrom provided him with a telephone and eight telephone books at 2:37 a.m. Krech called an attorney at 2:44 a.m. and left a voice-mail message. The record is unclear as to whether Krech gave the attorney a call-back number at the police station. If the attorney had called the number from which Krech made his call while Krech was on another call, the attorney would have heard a busy signal.

At 2:48 a.m., Officer Engstrom suggested to Krech that he use the telephone books to find another attorney. Krech said that he did not want to do so. Krech did not attempt to call another attorney. At 2:55 a.m., Officer Engstrom informed Krech that he had a "couple more minutes" to reach an attorney. At 3:02 a.m., Officer Engstrom terminated Krech's consultation time. Krech asked Officer Engstrom why his consultation time was

2

being terminated. Officer Engstrom answered by saying that Krech is allowed a reasonable amount of time and that "we can't sit and wait all night for an attorney to call." Officer Engstrom asked Krech whether he would submit to a breath test. Krech said that he would "prefer to wait 'til I hear from the attorney." Officer Engstrom said that he needed a "yes or no answer." Krech asked what the consequences would be if he continued to wait for the attorney to return his call. Officer Engstrom re-read the portion of the implied-consent advisory stating that refusal to take a chemical test is a crime. Krech submitted to the test, which revealed an alcohol concentration of .12.

The commissioner of public safety revoked Krech's license pursuant to the implied-consent statute. *See* Minn. Stat. § 169A.52, subd. 4 (2014). Krech petitioned the district court for judicial review of the commissioner's revocation. In a memorandum accompanying his petition, Krech argued that the breath-test results should be suppressed because his limited right to counsel was not vindicated before he consented to the breath test and because Officer Engstrom administered the breath test in violation of Krech's Fourth Amendment rights. The district court held a hearing on the petition in November 2013. Officer Engstrom testified about the circumstances surrounding Krech's attempt to contact an attorney and the implied-consent advisory. Krech offered into evidence an audio-recording of Officer Engstrom's reading of the implied-consent advisory and the conversation between the officer and Krech leading up to the breath test. In a written order, the district court found that Krech's limited right to counsel was vindicated and that the breath test did not violate his Fourth Amendment rights because he validly

3

consented to it. Accordingly, the district court denied Krech's petition and sustained the revocation of his license. Krech appeals.

**D E C I S I O N**

**I. Limited Right to Counsel**

Krech first argues that the district court erred by concluding that his limited right to counsel was vindicated. Specifically, Krech argues that Officer Engstrom violated his limited right to counsel by terminating his consultation time solely because a certain amount of time had elapsed.

A driver who is suspected of driving while impaired has a limited right to consult with an attorney before deciding whether to submit to chemical testing. *Friedman v. Commissioner of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991) (citing Minn. Const. art. I, § 6). The driver's limited right to consult with an attorney prior to testing is "vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel." *Id.* (quotation omitted). If the driver is unable to contact an attorney within a reasonable time, "the person may be required to make a decision regarding testing in the absence of counsel." *Id.* (quotation omitted).

When considering whether the limited right to counsel has been vindicated, a court should consider the totality of the circumstances surrounding the implied-consent advisory rather than basing the conclusion "on elapsed minutes alone." *Mell v. Commissioner of Pub. Safety*, 757 N.W.2d 702, 713 (Minn. App. 2008). In this case, the district court concluded that, "based on all the facts," Krech "was accorded a reasonable opportunity to consult with counsel." This court applies a clear-error standard of review

4

to the district court's factual findings and a *de novo* standard of review to a district court's conclusion as to whether a driver's limited right to counsel was vindicated. *State v. Christiansen*, 515 N.W.2d 110, 112 (Minn. App. 1994), *review denied* (Minn. June 15, 1994).

Several factors are relevant to the question whether a driver was given a reasonable opportunity to consult with counsel. These factors include whether the driver made a good-faith and sincere effort to reach an attorney, *Palme v Commissioner of Pub. Safety*, 541 N.W.2d 340, 345 (Minn. App. 1995), *review denied* (Minn. Feb. 27, 1996), the time of day when the driver attempted to contact an attorney, *Kuhn*, 488 N.W.2d at 842, and the length of time the driver has been under arrest. *Id.* In this case, these factors lead to the conclusion that Krech had a reasonable opportunity to consult with counsel.

First, as the district court noted, Krech declined to call other attorneys after leaving a voice-mail message for one attorney. This court has differentiated between "refusing to contact more than one attorney" and making a "good-faith and sincere effort" to call multiple attorneys. *Id.* at 841; *see also Linde v. Commissioner of Pub. Safety*, 586 N.W.2d 807, 810 (Minn. App. 1998) (concluding that driver's limited right to counsel was vindicated in part because he refused to contact more than one attorney), *review denied* (Minn. Feb. 18, 1999). Krech's insistence on contacting only one attorney demonstrates a lack of a good-faith and sincere effort to reach an attorney.

Second, we acknowledge that "[a] driver should be given more time in the early morning hours when contacting an attorney may be more difficult." *Kuhn*, 488 N.W.2d at 842. But this factor is less relevant if a driver leaves a message for only one attorney

because attorneys are unlikely to receive and return telephone calls in the early morning hours. *See Palme*, 541 N.W.2d at 345 ("A driver cannot be permitted to wait indefinitely for a call that may never come.").

Third, Krech was given a reasonable amount of time in which to contact an attorney. This court has held that it was reasonable for an officer to terminate a driver's attorney time after 29 minutes because the driver actually reached one attorney, was told that another attorney would call him back, and did not attempt to contact other attorneys. *Id.* Similarly, in this case, Krech was given 25 minutes to reach an attorney and declined to call other attorneys even though he had no particular reason to believe that the first attorney would return his message at 3:00 a.m. Krech contends that his preferred attorney would have heard a busy signal if Krech had used the telephone to call other attorneys. But the district court found that the record is unclear as to whether Krech included a call-back number in his voicemail message, and Krech has not shown that the district court clearly erred in that finding. In any event, Krech was aware that he had a limited time in which to reach an attorney and chose to wait for one attorney to return his message rather than to increase his chances of obtaining legal advice by calling multiple attorneys.

Based on the undisputed facts, we conclude that Krech was given a reasonable opportunity to consult with an attorney. Thus, the district court did not err by concluding that Krech's limited right to counsel was vindicated.

## II. Validity of Consent

Krech also argues that the district court erred by finding that his consent to the breath test was not coerced and, thus, is valid.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10. A test of a person's breath constitutes a search for purposes of the Fourth Amendment. *Skinner v. Railway Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1413 (1989); *State v. Netland*, 762 N.W.2d 202, 212 (Minn. 2009), *abrogated in part by Missouri v. McNeely*, 133 S. Ct. 1552, 1568 (2013), *as recognized in State v. Brooks*, 838 N.W.2d 563, 567 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). As a general rule, a search requires either a warrant or an exception to the warrant requirement, such as the person's consent, *Brooks*, 838 N.W.2d at 568; the existence of exigent circumstances, *McNeely*, 133 S. Ct. at 1558; or a valid arrest, *State v. Bernard*, 859 N.W.2d 762, 766-67 (Minn. 2015). In an implied-consent case, the commissioner of public safety bears the burden of showing by a preponderance of the evidence that the driver voluntarily consented to chemical testing. *Johnson v. Commissioner of Pub. Safety*, 392 N.W.2d 359, 362 (Minn. App. 1986). This court applies a clear-error standard of review to a district court's finding that a driver

validly consented to a breath test. *Jasper v. Commissioner of Pub. Safety*, 642 N.W.2d 435, 440 (Minn. 2002).

In this case, the district court found that Krech's consent to the breath test was not coerced because "there is nothing in the record to suggest [Krech's] will was overborne or his capacity for self-determination was critically impaired." In *Brooks*, the supreme court held that a driver's consent was not coerced merely because it is a crime to refuse a chemical test. 838 N.W.2d at 570. Instead, "[w]hether consent is voluntary is determined by examining the totality of the circumstances." *Id.* at 568 (quotation omitted). The relevant circumstances include "'the nature of the encounter, the kind of person the defendant is, and what was said and how it was said.'" *Id.* at 569 (quoting *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994)). The factors relevant to the nature of the encounter are whether the driver was read the implied-consent advisory, what led the police to suspect the driver of being under the influence, and whether the driver had the opportunity to consult with an attorney. *Id.* The supreme court reasoned that "nothing in the record suggests that Brooks was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *Id.* (quotation marks omitted).

Krech contends that the commissioner failed to prove by a preponderance of the evidence that he voluntarily consented to the breath test because the commissioner did not prove "that Krech would have agreed to a test regardless of whether he was told that the law required him to do so and then threatened with an additional crime if he did not." Krech appears to contend that the implied-consent advisory is coercive because it informs

8

a driver that he or she is required by law to submit to a chemical test and that refusal to submit is a crime. But the supreme court in *Brooks* observed that when a driver is read the implied-consent advisory, the driver is informed that he or she has a choice whether to submit to chemical testing. 838 N.W.2d at 572. The supreme court reasoned that "while the choice to submit or refuse to take a chemical test 'will not be an easy or pleasant one for a suspect to make,' the criminal process 'often requires suspects and defendants to make difficult choices.'" *Id.* at 571 (quoting *South Dakota v. Neville*, 459 U.S. 553, 564, 103 S. Ct. 916, 923 (1983)). The supreme court made clear in *Brooks* that the implied-consent advisory weighs in favor of voluntariness. Thus, the fact that Krech received and understood the implied-consent advisory supports the conclusion that he voluntarily consented to the breath test.

Krech attempts to distinguish this case from *Brooks* by noting that he was "compliant throughout his encounter with the officers," that he did not actually consult with an attorney, that he was under arrest at the police station when he consented, and that there is no evidence that he previously had been arrested for DWI. The supreme court in *Brooks* concluded that the defendant voluntarily consented to the breath test because he was read the implied-consent advisory, had "the ability to consult with counsel," and "was neither confronted with repeated police questioning nor was he asked to consent after having spent days in custody." *Id.* at 571-72 (citing *State v. High*, 287 Minn. 24, 27-28, 176 N.W.2d 637, 639 (1970)). Based on these factors, Krech's case actually is quite similar to *Brooks*. To the extent the facts may be different, they do not overcome the similarities. The supreme court did not reason in *Brooks* that actual

consultation with an attorney is essential; rather, the supreme court stated that actual consultation "reinforces the conclusion that his consent was not illegally coerced." *Id.* at 571. A proper analysis inevitably must return to the totality of the circumstances. *Id.* at 569. The record in this case shows that Krech was asked three times whether he would consent to a breath test, was given 25 minutes to consider the issue and contact an attorney, and received clear information from Officer Engstrom about the consequences of a refusal. The facts do not show that Krech's will was "overborne and his capacity for self-determination critically impaired." *See id.* at 571. Rather, the facts indicate that Krech made a decision after being informed that he could say "no" and after considering the consequences of a "no" answer.

Krech contends further that consent cannot be valid if a person is merely acquiescing to a claim of lawful authority to conduct a search. He cites *Bumper v. North Carolina*, 391 U.S. 543, 88 S. Ct. 1788 (1968), in support of this argument. In *Bumper*, the United States Supreme Court held that a woman did not consent to a search of her home because she invited law-enforcement officers into her home after they said that they had a warrant to search the home. *Id.* at 550, 88 S. Ct. at 1792. The Court reasoned that "[t]he situation is instinct with coercion" if law-enforcement officers claim to have a search warrant because "the occupant has no right to resist the search." *Id.* In *Brooks*, our supreme court reasoned that *Bumper* is distinguishable in that a Minnesota driver has the right to refuse to submit to chemical testing because the implied-consent law does not allow a law-enforcement officer to force a driver to submit to a breath test. 838 N.W.2d at 571 (citing Minn. Stat. § 169A.52, subd. 1 (2014)). Krech's argument is essentially the

same argument that was rejected by our supreme court in *Brooks*. Thus, we reject Krech's argument that his consent must be considered involuntary under *Bumper*.

In sum, we conclude that the district court did not err by finding that Krech voluntarily consented to the breath test.

## III. Constitutionality of Test-Refusal Statute

Krech argues for the first time on appeal that the implied-consent statute, specifically the provision criminalizing refusal, is unconstitutional. In response, the commissioner argues that this court should not consider the argument because Krech did not present it to the district court. "It is an elementary principle of appellate procedure that a party may not raise an issue or argument for the first time on appeal and thereby seek appellate relief on an issue that was not litigated in the district court." *Doe 175 v. Columbia Heights Sch. Dist.*, 842 N.W.2d 38, 42 (Minn. App. 2014) (citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988)). Krech does not argue that an exception to the general rule applies. Thus, we will not consider the argument.

**Affirmed.**

11