*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0258**

Russel Edward Straub, Jr., petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed January 8, 2024**
**Affirmed**
**Segal, Chief Judge**

Cook County District Court
File No. 16-CV-22-155

Jeffrey S. Sheridan, Sheridan, Dulas, Hunstad & Kins, P.A., Eagan, Minnesota (for appellant)

Keith Ellison, Attorney General, Matthew A. McGuire, Assistant Attorney General, St. Paul, Minnesota (for respondent)

        Considered and decided by Connolly, Presiding Judge; Segal, Chief Judge; and

Smith, John, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**SEGAL**, Chief Judge

Appellant challenges a district court order sustaining the revocation of his driving privileges based on his refusal to submit to a breath test after being arrested for suspicion of driving while impaired (DWI).  He argues that his right to counsel was not vindicated, that he timely changed his mind after his initial refusal to submit to a breath test, and that his due-process rights were violated.  We affirm.

## FACTS

On August 20, 2022, at approximately 5:03 p.m., a Cook County sheriff's deputy responded to a call from dispatch about an erratic driver.  The deputy located and stopped the driver, appellant Russel Edward Straub, Jr.  The deputy smelled alcohol coming from Straub, saw open alcohol containers in Straub's car, and performed the standardized field sobriety tests.  Based on these circumstances and Straub's performance on the sobriety tests, the deputy arrested Straub on suspicion of DWI.

The deputy transported Straub to the Cook County jail where he began the implied-consent process by reading Straub the breath-test advisory at approximately 5:29 p.m.  Straub stated that he understood his rights and wished to consult with an attorney.  At approximately 5:31 p.m., the deputy provided Straub a telephone and two directories—the "Blue Pages" and the "DUI Directory."  Straub flipped through one of the directories, called one attorney, left a voicemail for the attorney with a call-back number, and then sat down.  This process took about two minutes.  For the next 16 minutes or so, Straub interacted with his cell phone, asked about his dog who was in the car with him when he

2

was stopped, and expressed his frustration at having been arrested. At about 5:50 p.m., the deputy ended Straub's attorney time and asked if he would take a breath test. Straub responded "no." The deputy began booking Straub into jail for test refusal.

Approximately nine minutes after Straub refused to take the test, Straub revisited the topic. Straub asked if he could still take the test. The deputy told him that it was not too late. Straub asked the deputy if he would be released if he took the breath test and "bl[e]w clean."[1] The deputy told Straub that he could submit to the breath test but that, either way, he would be arrested and held because he had probable cause to believe Straub was driving under the influence of alcohol. The deputy asked Straub again if he wished to take the breath test and offered to re-read the breath-test advisory. Again, Straub asked the deputy if he would be released if he took the test and blew clean. The deputy told him, "no." Straub replied, "Well then forget it." The deputy then continued booking Straub into jail.

Respondent Commissioner of Public Safety revoked Straub's driver's license based on his refusal to submit to a breath test. Straub petitioned the district court to review the revocation. At the review hearing, the commissioner provided testimony from the deputy and submitted other evidence, including the breath-test advisory and video footage of the implied-consent process. The deputy testified that he believed the amount of attorney time was reasonable. He testified that he had probable cause to arrest and hold Straub for driving

---

[1] Straub's inquiry followed a brief exchange during which Straub had asked if he would be released the following morning. The deputy told him that he would likely be held over the weekend because of a prior conviction on his record.

under the influence. He also testified that if Straub had taken the test and blown clean, he would still have had probable cause to arrest and hold Straub for DWI. The district court sustained the revocation of Straub's driving privileges.

**DECISION**

Straub argues on appeal that his right to counsel was not vindicated because he was not provided with adequate phone directories to select an attorney and because the time allowed to contact an attorney was too short. Straub also argues that he timely changed his mind about refusing to take the test. Finally, Straub argues that the deputy violated his due-process rights by allegedly providing misleading information that Straub could be held in jail even if he submitted to the breath test and "bl[e]w clean."

## I. Straub's right to counsel was vindicated.

A driver arrested for a DWI has a limited right to consult counsel of his choosing when deciding whether to submit to a breath test. *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991). To vindicate this right, law enforcement must, at a minimum, give the driver access to a phone and "a reasonable time to contact and talk with counsel." *Id.* (quotation omitted). A reasonable amount of time "is not a fixed amount of time, and it cannot be based on elapsed minutes alone." *Mell v. Comm'r of Pub. Safety*, 757 N.W.2d 702, 713 (Minn. App. 2008) (citing *Kuhn v. Comm'r of Pub. Safety*, 488 N.W.2d 838, 842 (Minn. App. 1992), *rev. denied* (Minn. Oct. 20, 1992)). We "must balance the efforts made by the driver against the efforts made by the officer; . . . [the] focus is 'both on the police officer's duties in vindicating the right to counsel and the defendant's diligent exercise of the right.'" *Id.* (quoting *Kuhn*, 488 N.W.2d at 842).

4

In considering whether the right to consult counsel has been vindicated, courts are to consider the totality of the circumstances, such as the time of day, how long the driver has been under arrest, and whether the driver made a good-faith and sincere effort to contact counsel. *Kuhn*, 488 N.W.2d at 842. Generally, defendants are allowed to await return calls, but they are not given an indefinite amount of time to do so. *Palme v. Comm'r of Pub. Safety*, 541 N.W.2d 340, 345 (Minn. App. 1995), *rev. denied* (Minn. Feb. 27, 1996). If the defendant refuses to contact more than a single attorney or has given up on trying to contact an attorney, law-enforcement officers need not wait any longer. *Kuhn*, 488 N.W.2d at 841-42; *see also Gergen v. Comm'r of Pub. Safety*, 548 N.W.2d 307, 310 (Minn. App. 1996) (determining that driver did not make a good-faith effort to contact an attorney and officer vindicated driver's limited right to counsel), *rev. denied* (Minn. Aug. 6, 1996); *Palme*, 541 N.W.2d at 345 (determining that 29 minutes was reasonable given defendant's inaction).

Whether a driver's right to counsel has been vindicated presents a mixed question of law and fact. *Mell*, 757 N.W.2d at 712. Findings of fact are reviewed for clear error. *Id.* When the facts are not in dispute, this court reviews de novo whether an individual's right to counsel was vindicated. *Id.*

### A. Choice of Attorney

Straub argues that the deputy unreasonably limited his choice of attorneys because the deputy provided him with only two phone directories—the "Blue Pages" and the "DUI Directory." Straub relies on *McNaughton v. Commissioner of Public Safety* to support his argument. 536 N.W.2d 912 (Minn. App. 1995). In that case, the driver was given a list of

5

five pre-selected local attorneys. *Id.* at 913-14. The driver told the officer that he wanted to call an attorney who was not on the list. *Id.* at 914. The driver did not have access to telephone books or direct access to the telephone or directory assistance. *Id.* at 915. Under these circumstances, this court concluded that the driver's right to consult with counsel of his choosing was not vindicated. *Id.*

Straub also relies on two nonprecedential opinions of this court, *Walsh v. Comm'r of Pub. Safety*, No. C8-02-532, 2002 WL 31655161 (Minn. App. Nov. 26, 2002), and *State v. Sherman*, No. C4-00-1995, 2001 WL 345681 (Minn. App. Apr. 10, 2001).[2] In *Walsh*, the driver was provided only one directory—the Blue Pages. 2002 WL 31655161, at *1. We reversed the driver's license revocation in that case because the district court based its findings on evidence not in the record in comparing the Blue Pages to a local telephone directory. *Id.* at *3. Consequently, the reversal in *Walsh* is inapposite.

In *Sherman*, the driver had access to only one telephone directory—the Blue Pages—that listed no more than two criminal/DWI defense attorneys in the county even though it listed dozens of other such attorneys throughout the state. 2001 WL 345681, at *1. Under these circumstances in which the driver only had the opportunity to select one of two local attorneys, this court concluded that the driver's right to consult counsel of his choosing was not vindicated. *Id.* at *2.

While we recognize similarities, we conclude the facts of this case differ from those in *McNaughton* and *Sherman*. For instance, while Straub did not have access to a regular

---

[2] Nonprecedential opinions may only be cited as persuasive authority. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c).

telephone book, the record supports that he had direct access to a telephone and at least two directories—the Blue Pages and the DUI Directory. The record also supports that Straub only quickly looked at one of the directories, made a single call, and then sat down. Straub never looked at the second directory or otherwise attempted to contact other attorneys. As we commented in *Kuhn*, "refusing to try to contact more than one attorney or giving up trying to contact an attorney is fundamentally different than making a continued good-faith effort to reach an attorney." *Kuhn*, 488 N.W.2d at 841.

The district court reasoned in its order sustaining the revocation of Straub's driving privileges that, in addition to the two directories, Straub had access to a smartphone as can be seen in the video of the implied-consent advisory process. Straub argues that the record does not support the district court's conclusion that Straub's smartphone access gave him "the ability to research and contact attorneys" beyond those listed in the directories. Specifically, Straub asserts that the district court improperly assumed he had "unrestricted access to the internet" based only on the videos of him interacting with his cell phone. But even if the district court erred in making such an inference, the remaining evidence supports that Straub's right to counsel was vindicated and we thus reject Straub's arguments to the contrary.

### B. Attorney Time

Straub argues that the deputy unreasonably limited his opportunity to contact an attorney based on a fixed amount of time. As noted above, we have held that in assessing whether a reasonable amount of time has been allowed, the time cannot be based just on a fixed number of "elapsed minutes." *Mell*, 757 N.W.2d at 713. But here, the deputy's

7

testimony supports the district court's finding that the deputy's decision was not based only on elapsed minutes. The deputy testified that he believed the amount of time was reasonable "[i]n this instance," suggesting that the deputy considered the totality of the circumstances. Here, Straub left a single voicemail and sat down. As time passed, Straub's lack of effort to contact another attorney suggests that he had expended whatever effort he was willing to expend. In addition, Straub never indicated that the phone directories provided were inadequate or that he wanted to speak with a specific attorney. And Straub never asked the deputy for additional time.

Given these circumstances, the record supports that the deputy satisfied his minimum duties in vindicating Straub's right to counsel and that Straub failed to diligently exercise that right to counsel. Therefore, under the totality of the circumstances presented, we discern no error in the district court's determination that Straub's right to counsel was vindicated.

## II. The record does not support Straub's argument that he "timely changed his mind."

Straub argues that the district court erred by finding that he refused the breath test because his inquiries to the deputy about submitting to a test, after his initial refusal, constituted a timely change of mind. The record, however, does not support Straub's argument.

"To determine whether a driver's failure to provide a sample constitutes refusal, a court should look to the driver's words and actions." *Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717, 722 (Minn. App. 2014). "This court has consistently held that a

8

subsequent change of heart does not revoke an initial refusal, even when a relatively short period of time has elapsed between the initial refusal and the reconsideration except for an 'almost immediate' change of mind." *Lewis v. Comm'r of Pub. Safety*, 737 N.W.2d 591, 593 (Minn. App. 2007) (quoting *Palme*, 541 N.W.2d at 343) (determining that driver's change of mind did not cure his initial refusal when it occurred more than 9 to 11 minutes after initial refusal); *see also Parsons v. Comm'r of Pub. Safety*, 488 N.W.2d 500, 502-03 (Minn. App. 1992) (determining that driver's change of mind did not cure her initial refusal when it occurred nine minutes after initial refusal); *cf. Schultz v. Comm'r of Pub. Safety*, 447 N.W.2d 17, 19 (Minn. App. 1989) (determining that driver's change of mind cured his initial refusal because it was immediate, as the officer only had time to begin writing the reason for refusal on the implied-consent form before the driver changed his mind). "[W]hether a driver has refused to submit to chemical testing is a question of fact, to which this court applies a clear-error standard of review." *Stevens*, 850 N.W.2d at 722.

The district court found that Straub's inquiries did not constitute a change of mind or willingness to take the breath test. The video footage in the record reveals Straub's words and actions support this finding. Straub responded "no" when the deputy initially offered him the breath test. Straub then asked the deputy whether taking the test and "blow[ing] clean" would result in his release from jail. The deputy responded that either way Straub would continue to be held based on probable cause. The deputy then offered Straub the opportunity to take the breath test a second time. Straub asked again whether he would be released if he took the test and blew clean. After the deputy told him, "no,"

9

Straub said, "Well then forget it." The district court's finding that Straub refused the test and did not change his mind is fully supported in the record.

**III. Straub's due-process rights were not violated because the deputy's statement that Straub could be held on probable cause for a DWI even if he "bl[e]w clean" on a breath test was not inaccurate or misleading.**

Straub's final argument is that he reasonably refused to take the breath test because the deputy provided him inaccurate and misleading information and that this violated his due-process rights.[3] Minnesota implied-consent law governs the administration of breath, blood, and urine tests to drivers who are suspected of being under the influence of alcohol or hazardous or controlled substances. Minn. Stat. §§ 169A.50-.53 (2022); *Johnson v. Comm'r of Pub. Safety*, 911 N.W.2d 506, 507 (Minn. 2018). Prior to administering a breath test, an officer must inform the driver that such a test is required by state law, that refusal to submit to a breath test is a crime, and that the driver has the right to consult first with an attorney. Minn. Stat. § 169A.51, subd. 2. This information is known as a breath-test advisory. *Id.*

To establish the affirmative defense of reasonable refusal, the driver must demonstrate that the reason asserted at the hearing was, in fact, the reason for the refusal at the time testing was refused. *Maietta v. Comm'r of Pub. Safety*, 663 N.W.2d 595, 599 (Minn. App. 2003). Whether a refusal is reasonable is a question of fact, which we review for clear error. *State, Dep't of Highways v. Beckey*, 192 N.W.2d 441, 444-45 (Minn. 1971).

---

[3] Straub also argues that he reasonably refused because his right to counsel was not vindicated. Based on our conclusion that Straub's right to counsel was vindicated, we do not address this argument here.

10

Here, the parties do not dispute that the deputy read the standard breath-test advisory to Straub, as required under Minn. Stat. § 169A.51, subd. 2. Straub's argument focuses instead on the deputy's response to Straub's question whether he would be released if he "bl[e]w clean" on the breath test. The deputy told Straub that he would still be held based on the existence of probable cause for a DWI arrest. Straub argues that this was a misstatement because "probable cause would have vanished entirely in the face of an objective test showing that [he] had no alcohol in his body" and "there simply would not have been any legal basis to continue holding him." We disagree.

The district court's finding that the deputy did not improperly mislead Straub is supported by the record. Based on the evidence, the deputy had probable cause to arrest Straub on suspicion of DWI based on the report of erratic driving, Straub's performance during the field sobriety tests, the smell of alcohol coming from Straub, and the open alcohol containers found in Straub's vehicle. Minnesota law provides that, if an officer has reason to believe an individual committed a prescribed DWI offense, the officer "shall arrest and take the person into custody." Minn. Stat. § 169A.40, subd. 3 (2022); *see Reeves v. Comm'r of Pub. Safety*, 751 N.W.2d 117, 120 (Minn. App. 2008) ("Probable cause to arrest a person for DWI exists when the facts and circumstances available at the time of arrest reasonably warrant a prudent and cautious officer to believe that an individual was driving while under the influence.").[4] The deputy also testified that, if Straub had taken the breath test and blown "all zeros," he likely would have pursued a search warrant to

[4] Minn. Stat. § 169A.40, subd. 3, was amended during the 2023 legislative session, but the changes do not affect this analysis.

obtain blood or urine samples for testing to determine if Straub was under the influence of other substances. In addition, even if the breath test registered 0.00 alcohol concentration, probable cause to arrest a driver for DWI can still exist based on the totality of the circumstances. *See State v. Prax*, 686 N.W.2d 45, 47, 49 (Minn. App. 2004), *rev. denied* (Minn. Dec. 14, 2004) (concluding that probable cause existed to arrest driver for DWI even after the driver's preliminary breath test registered an alcohol concentration of 0.00).

Finally, the deputy's knowledge that test refusal would subject Straub to a longer license revocation does not make his statements improperly misleading. The deputy's failure to warn Straub of the potential for license revocation does not violate due process. Even if Straub had asked the deputy about the potential impact of refusing to test, which he did not, the only advice that the deputy would have been required to give was included in the breath-test advisory, which the deputy accurately read and offered to re-read. *See Dehn v. Comm'r of Pub. Safety*, 394 N.W.2d 272, 274 (Minn. App. 1986) (concluding that an officer did not violate due process by "merely responding to a question" when the answer given by the officer was not "unduly coercive or confusing," even though the officer "could have expanded his answer"); *State v. Gross*, 335 N.W.2d 509, 510 (Minn. 1983) (holding that the breath-test advisory contains all the advice that police are required to provide).

The record supports that the deputy gave an accurate advisory and that Straub failed to show that the deputy's response was coercive or actively misleading. Because we

conclude there was no violation of due process, we affirm the district court's order sustaining the revocation of Straub's driving privileges.

**Affirmed.**